[Sac. No. 7947. In Bank. Feb. 20, 1973.]

RALPH L. BROWN, Plaintiff and Appellant, v.
GUISEPPE BEPPINO MERLO, Defendant and Respondent.

## COUNSEL

Watt & Leverenz and Reginald M. Watt for Plaintiff and Appellant.

Robert E. Cartwright, Edward I. Pollock, Theodore A. Horn, Marvin E. Lewis, William H. Lally, Joseph W. Cotchett, Herbert Hafif, David Daar and Leonard Sacks as Amici Curiae on behalf of Plaintiff and Appellant.

A. John Merlo, Ann R. Houghton, Jordan N. Peckham and Chris Gasparich for Defendant and Respondent.

## OPINION

**TOBRINER, J.**—Section 17158 of the Vehicle Code, California's "automobile guest statute,"[1] deprives an injured automobile guest of any recovery

---

[1]Unless otherwise indicated, all references in this opinion to "automobile guest statute" and "guest statute" are to Vehicle Code section 17158.

Automobile guest statutes are currently in force in approximately half of our sister states. Connecticut enacted the first guest statute in 1927; that state was also the first to repeal its guest statute, in 1937. Several other states have repealed their guest statutes in the intervening years; significantly, no state has enacted a guest statute since 1939. (See generally 2 Harper & James, Law of Torts (1956) § 16.15, at pp. 950-951 & fn. 4; id. (Supp. 1968) § 16.15, at pp. 48-49; Tipton, *Florida's Automobile Guest Statute* (1958) 11 U.Fla.L.Rev. 287, 287-288.) Two states rely on judicial decisions to diminish the standard of care owed by a driver of an automobile to his nonpaying guest. (See *Massaletti* v. *Fitzroy* (1917) 228 Mass. 487 [118 N.E. 168]; *Epps* v. *Parrish* (1921) 26 Ga.App. 399 [106 S.E. 297].)

A basic premise of guest statutes, that one who carries automobile riders for no compensation does not owe them a duty of ordinary care, appears to have originated with the 1917 *Massaletti* decision. In that case the Massachusetts court justified its result by analogizing the situation of a driver who carries a rider for no compensation to that of a gratuitous bailee of property. *Massaletti* never obtained a following among sister jurisdictions, but in fact seems to have met near-universal judicial condemnation.

for the careless driving of his host unless the injury results from the driver's willful misconduct or intoxication. Thus, in those cases which the statute reaches, the provision withdraws from automobile "guests," i.e., passengers who give no compensation for their ride, the protection against negligently inflicted injuries which Califorina law generally affords to all others. Plaintiff, an automobile guest who has been foreclosed by this statute from recovery for injuries caused by defendant's alleged negligence, contends that the statute conflicts with the constitutional guarantee of "equal protection of the laws" embodied in our state (Cal. Const., art. I, §§ 11, 21) and federal (U.S. Const., 14th Amend.) Constitutions.

For the reasons discussed below, we have concluded that plaintiff's constitutional attack must be sustained. As we shall explain, two distinct justifications—(1) the protection of hospitality and (2) the elimination of collusive lawsuits—have traditionally been proffered to support the guest statute's operation. Upon analysis, however, neither justification constitutes a rational basis for the differential treatment actually accorded by the statute's classification scheme. As we discuss more fully below, the "protection of hospitality" rationale exhibits a number of fatal defects: first, this rationale fails to explain why the statute accords differential treatment to *automobile* guests as distinguished from all other guests or, indeed, all other recipients of hospitality or generosity; second, it fails to explain, in light of recent developments in comparable legal doctrines, how such an interest in protecting hospitality can rationally justify the withdrawal of legal protection from guests; and finally, it completely ignores the prevalence of liability insurance coverage today, a factual development which largely undermines any rational connection between the prevention of suits and the protection of hospitality.

The "prevention of collusion" rationale is similarly inadequate to justify, in equal protection terms, the elimination of all automobile guests' right to recover for negligence. Although the guest statute may prevent some collusive suits connived by automobile drivers and their passengers to defraud insurers, the enactment's classification scheme is far too gross and over-inclusive to be justified by this end since the statute bars the great majority of valid suits along with fraudulent claims. On numerous occasions in the recent past this court has held similar "anti-collusion" justifications insuffi-

(See, e.g., *Clark* v. *Clark* (1966) 107 N.H. 351, 356-357 [222 A.2d 205, 210]; *Marple* v. *Haddad* (1927) 103 W.Va. 508, 512-513 [138 S.E. 113, 115, 61 A.L.R. 1248]; *Munson* v. *Rupker* (1925) 96 Ind.App. 15 [148 N.E. 169, 172-174].) Furthermore, the *Massaletti* rationale had been rejected in California as early as 1872, when the Civil Code was enacted with a still-effective provision that "[a] carrier of persons without reward must use ordinary care and diligence for their safe carriage." (Civ. Code, § 2096.) The California guest statute forms a specific exception to this rule.

cient to support significantly narrower classification schemes; the wholesale elimination of all guests' causes of action for negligence does not treat similarly situated persons equally, but instead improperly discriminates against guests on the basis of a factor which bears no significant relation to actual collusion.

Finally, the irrationality of the guest statute's classifications is aggravated by a series of limiting statutory "loopholes," which fortuitously stay the operation of the statute under a variety of diverse, illogical circumstances. Although in specific cases such statutory quirks may work to ameliorate the harsh consequences of the general provision, these numerous exceptions when viewed in toto produce an absurd and illogical pattern which completely drains the statute of any rationality it might conceivably claim. In light of all these circumstances, we have concluded that the automobile guest statute must succumb to the constitutional demand of rationality imposed by our state and federal Constitutions.

Before beginning our analysis of plaintiff's constitutional claim, we briefly review the facts which gave rise to the instant litigation. On October 15, 1967, defendant and plaintiff were riding in a jeep operated by defendant on a public highway in Butte County. The jeep crossed the center line of the highway and collided with an embankment on the opposite side of the road; plaintiff sustained serious physical injuries to his head, body and limbs as a result of this accident.

Thereafter, plaintiff brought an action against defendant, alleging both willful misconduct and negligence. Defendant propounded a series of interrogatories to plaintiff in an attempt to determine the grounds upon which plaintiff relied to exempt his cause of action in negligence from the bar of the guest statute. In response to these interrogatories, plaintiff asserted, "We do not contend that Mr. Brown was a passenger as distinguished from a guest under the guest statute. Our negligence cause of action is based upon our contention that the guest statute is an unconstitutional denial of equal protection of the law."

To defendant's motion for summary judgment on the negligence cause plaintiff responded by a repetition of his contention that the guest statute violated constitutional guarantees. The trial court granted a defendant's motion on the cause of action in negligence; the cause of action for willful misconduct went to a jury, which returned a verdict in defendant's favor. Plaintiff appeals only from the summary judgment against his cause of action in negligence, asserting that the guest statute unconstitutionally denies him as a guest the recovery he would be entitled to as a paying passenger. Because plaintiff falls squarely within the class of persons to

whom the guest statute denies recovery for simple negligence, we are compelled to resolve the constitutional issue on this appeal.

1. ■ *Under our state and federal "equal protection" provisions a statute may single out a class for distinctive treatment only if such classification bears a rational relation to the purposes of the legislation.*

Article I, sections 11 and 21 of the California Constitution guarantee to every person that "[a]ll laws of a general nature shall have a uniform operation" and that "[no] citizen, or class of citizens, [shall] be granted privileges or immunities which, upon the same terms, shall not be granted to all citizens"; the Fourteenth Amendment of the United States Constitution frames a similar commitment, mandating that no state may "deny to any person within its jurisdiction the equal protection of the laws." ■ This principle of "equal protection" preserved by both state and federal Constitutions, of course, "does not preclude the state from drawing any distinctions between different groups of individuals" (*In re King* (1970) 3 Cal.3d 226, 232 [90 Cal.Rptr. 15, 474 P.2d 983]), but it does require that, at a minimum, "persons similarly situated with respect to the legitimate purpose of the law receive like treatment." (*Purdy & Fitzpatrick* v. *State of California* (1969) 71 Cal.2d 566, 578 [79 Cal.Rptr. 77, 456 P.2d 645, 38 A.L.R.3d 1194]; *Darcy* v. *Mayor etc. of San Jose* (1894) 104 Cal. 642, 645-646 [38 P. 500].)

As the United States Supreme Court recently phrased the federal constitutional standard: "The Equal Protection Clause . . . den[ies] to States the power to legislate that different treatment be accorded to persons placed by a statute into different classes on the basis of criteria wholly unrelated to the objective of that statute. *A classification 'must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike.'*" (*Reed* v. *Reed* (1971) 404 U.S. 71, 75-76 [30 L.Ed.2d 225, 229, 92 S.Ct. 251], quoting *Royster Guano Co.* v. *Virginia* (1920) 253 U.S. 412, 415 [64 L.Ed. 989, 990-991, 40 S.Ct. 560] (italics added); see also *Eisenstadt* v. *Baird* (1972) 405 U.S. 438, 446-447 [31 L.Ed.2d 349, 358-359, 92 S.Ct. 1029]; *Weber* v. *Aetna Casualty & Surety Co.* (1972) 406 U.S. 164, 173 [31 L.Ed.2d 768, 777, 92 S.Ct. 1400].) ■ ■ ■ ■ Thus, when a statute provides that one class shall receive different treatment from another, our constitutional provisions demand more "than nondiscriminatory application within the class . . . establish[ed] . . . . [They] also [impose] a requirement of some rationality in the nature of the class singled out." (*Rinaldi* v. *Yeager* (1966) 384 U.S. 305, 308-309 [16 L.Ed.2d 577, 580, 86 S.Ct. 1497]; *Hayes* v. *Supe-*

*rior Court* (1971) 6 Cal.3d 216, 223 [98 Cal.Rptr. 449, 490 P.2d 1137].)[2]

■ In determining the scope of the class singled out for special burdens or benefits, a court cannot confine its view to the terms of the specific statute under attack, but must judge the enactment's operation against the background of other legislative, administrative and judicial directives which govern the legal rights of similarly situated persons. As the United States Supreme Court recognized long ago: "The question of constitutional validity is not to be determined by artificial standards [confining review "within the four corners" of a statute]. What is required is that state action, whether through one agency or another, or through one enactment or more than one, shall be consistent with the restrictions of the Federal Constitution." (*Gregg Dyeing Co.* v. *Query* (1932) 286 U.S. 472, 480 [76 L.Ed. 1232, 1238, 52 S.Ct. 631, 84 A.L.R. 831]; see, e.g., *Hayes* v. *Superior Court* (1971) 6 Cal.3d 216, 222-223 [98 Cal.Rptr. 449, 490 P.2d 1137]; *James* v. *Strange* (1972) 407 U.S. 128, 135-140 [32 L.Ed.2d 600, 607-610, 92 S.Ct. 2027].) With these basic constitutional principles in mind, we turn to the California guest statute.

Vehicle Code section 17158 provides in relevant part:[3] "[N]o per-

---

[2]Plaintiff urges that instead of applying this traditional equal protection "rationality" standard, we should examine the guest statute under the "strict scrutiny" standard employed in a variety of recent cases. (See, e.g., *Serrano* v. *Priest* (1971) 5 Cal.3d 584 [96 Cal.Rptr. 601, 487 P.2d 1241, 41 A.L.R.3d 1187]; *Sail'er Inn, Inc.* v. *Kirby* (1971) 5 Cal.3d 1 [95 Cal.Rptr. 329, 485 P.2d 529, 46 A.L.R.3d 351]; *In re Antazo* (1970) 3 Cal.3d 100 [89 Cal.Rptr. 255, 473 P.2d 999]; *Purdy & Fitzpatrick* v. *State of California* (1969) 71 Cal.2d 566 [79 Cal.Rptr. 77, 456 P.2d 645, 38 A.L.R.3d 1194].) As we explained in *Serrano,* however, the strict scrutiny standard has been utilized only " 'in cases involving "suspect classifications" or touching on "fundamental interests" ' " (5 Cal.3d at p. 597); although plaintiff attempts to bring the instant constitutional challenge under both of these rubrics, he cites neither authority nor persuasive reasoning either for the proposition that "automobile guests" constitute a "suspect classification" comparable to racial or sexual classifications, or for his claim that his right to sue for negligently inflicted injuries is a "fundamental interest" analogous to voting rights or education. Under these circumstances, we conclude that the strict scrutiny analysis is not applicable. (Accord *Wood* v. *Public Utilities Commission* (1971) 4 Cal.3d 288, 294-295 [93 Cal.Rptr. 455, 481 P.2d 823].)

[3]Section 17158 reads in full: "No person riding in or occupying a vehicle owned by him and driven by another person with his permission and no person who as a guest accepts a ride in any vehicle upon a highway without giving compensation for such ride, nor any other person, has any right of action for civil damages against the driver of the vehicle or against any other person legally liable for the conduct of the driver on account of personal injury to or the death of the owner or guest during the ride, unless the plaintiff in any such action establishes that the injury or death proximately resulted from the intoxication or willful misconduct of the driver."

The initial clause of this provision, relating to vehicle owners injured while riding in their own cars, was enacted in 1961 (Stats. 1961, ch. 1600, p. 3429); the application of this clause is not involved in the instant proceeding, and we accordingly intimate no opinion as to its validity.

son who as a guest accepts a ride in any vehicle upon a highway without giving compensation for such ride . . . has any right of action for civil damages against the driver of the vehicle or against any other person legally liable for the conduct of the driver on account of personal injury to or the death of the . . . guest during the ride, unless the plaintiff in any such action establishes that the injury or death proximately resulted from the intoxication or willful misconduct of the driver."

In practical terms, this statute establishes three distinct levels of classification or discrimination. First, the provision generally treats automobile "guests" differently from "paying" automobile passengers, precluding most of those who ride "without giving compensation" from recovery for negligence, while permitting those who pay to obtain such recovery. Second, the enactment treats *automobile* guests differently from other social guests and recipients of "generosity," withdrawing from such automobile guests the protection from negligently inflicted injuries generally enjoyed by "guests" in other contexts. Third, and finally, the statute distinguishes between different subclasses of automobile guests, withholding recovery from those guests injured while "in a vehicle" "during a ride" "upon a public highway," but permitting recovery by auto guests injured in other circumstances. In analyzing the constitutionality of the guest statute's operation in light of the applicable state and federal protections, we must evaluate the rationality of this tripartite classification scheme in light of the purposes of the legislation; no prior case has adjudicated the present constitutional claim on such a basis.[4]

---

[4]Over 40 years ago, in *Silver* v. *Silver* (1929) 280 U.S. 117 [74 L.Ed. 221, 50 S.Ct. 57, 65 A.L.R. 939], the United States Supreme Court did uphold the constitutionality of a Connecticut automobile guest statute in the face of an equal protection challenge. In *Silver,* however, the plaintiff had attacked the statute solely on the ground that the distinction drawn between automobile guests and guests in other conveyances was impermissible; in rejecting this argument, the Supreme Court did not consider the reasonableness of the two additional statutory distinctions—between "guests" and paying passengers and between different categories of automobile guests—which are attacked in the instant case. In addition, because of the focus of the plaintiff's argument, the *Silver* court approached the guest statute simply as one of the many automobile regulatory measures then rapidly coming into existence, and rejected plaintiff's constitutional challenge largely on the basis of the uniqueness of automobiles. That analysis, however, is not adequate to justify the multi-level classification scheme involved in California's guest statute.

Moreover, unlike the present case, the Connecticut statute reviewed in *Silver* was not set against the background of (1) almost universal liability insurance and (2) such decisions as *Rowland* v. *Christian* (1968) 69 Cal.2d 108 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496], *Silva* v. *Providence Hospital* (1939) 14 Cal.2d 762 [97 P.2d 798], and *Emery* v. *Emery* (1955) 45 Cal.2d 421 [289 P.2d 218]. As we explain hereafter, the current factual and legal setting demonstrates the unreasonableness of the guest statute's discriminatory treatment of automobile guests. For all these reasons, the decision in *Silver* does not control the instant case.

This court has never directly passed on the equal protection question posed by

Two justifications have traditionally been advanced in both judicial precedent and academic commentaries to support the guest statute's classification scheme. (See, e.g., *Stephan* v. *Proctor* (1965) 235 Cal.App.2d 228, 230 [45 Cal.Rptr. 124]; 2 Harper & James, Law of Torts (1956) § 16.15, p. 961.) First, the provision is said to promote hospitality by insulating generous drivers from lawsuits instituted by ungrateful guests who have benefited from a free ride. Second, it is suggested that the statute serves to eliminate the possibility of collusive lawsuits, in which a host fraudulently confesses negligence so as to permit his guest—presumably a friend or relative—to collect from the host's insurance company. As we explain below, however, neither of these justifications provides a reasonable explanation for the tripartite discrimination established by the statute and thus neither provides a rational basis to uphold the section against the present constitutional attack. We examine the "hospitality" rationale first.

2. ■ *The protection of hospitality does not provide a sufficient or rational basis for the guest statute's classifications.*

Cases interpreting California's guest statute, from the very first, have justified the legislation upon the hypothesis that it sought the protection of the generous host by prohibition of a suit by the ungrateful guest. (See, e.g., *Crawford* v. *Foster* (1930) 110 Cal.App. 81, 87 [293 P. 841]; *Kruzie* v. *Sanders* (1943) 23 Cal.2d 237, 242 [143 P.2d 704].) Even if we were to assume, however, that the protection of hospitality constitutes a rational ground for withdrawing a guest's protection from injury—an assumption we reject below—this justification provides no explanation for the statute's differential treatment of automobile guests as distinguished from other guests, or indeed, all other recipients of hospitality.[5]

---

plaintiff. Although the Court of Appeal in *Forsman* v. *Colton* (1933) 136 Cal.App. 97, 102 [28 P.2d 429] asserted that the constitutionality of the guest statute had been upheld in *Callet* v. *Alioto* (1930) 210 Cal. 65 [290 P. 438], the later case of *Ferreira* .v. *Barham* (1964) 230 Cal.App.2d 128, 131 [40 Cal.Rptr. 739], properly pointed out that *Callet* never considered the constitutional question. In *Patton* v. *La Bree* (1963) 60 Cal.2d 606 [35 Cal.Rptr. 622, 387 P.2d 398] this court addressed a contention that the 1961 amendment to the guest statute, denying recovery to car owners injured while riding as passengers in their own car, violated equal protection; in upholding the distinction between owner-passengers and nonowner-passengers, however, we made no pronouncement on the constitutionality of the original guest statute provision.

[5]California law does contain two other provisions under which nonpaying guests are generally deprived of a cause of action for negligence: the "airplane guest statute" (Pub. Util. Code, § 21406) and the "motorboat guest statute" (Harb. & Nav. Code, § 661.1), both of which are modeled after the automobile guest statute attacked in the instant case. Although these statutes do place automobile guests on an equal footing with some other guests in California, we cannot discern how automobile, airplane or motorboat guests can rationally be distinguished from all other guests in relation to an asserted state interest in protecting hospitality.

Under current California law, such guests or recipients of hospitality may generally demand that their hosts exercise due care so as not to injure them (see Civ. Code, §§ 1714, 2096; *Rowland* v. *Christian* (1968) 69 Cal.2d 108 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496]);[6] the present section, ostensibly to serve the cause of hospitality, diminishes that protection, but it does so only in the case of automobile guests. We can find no realistic state purpose which supports such a classification scheme;[7] under the stat-

[6]It is true that in 1929, when California's guest statute was first enacted, the statute could claim a closer relation to general tort doctrine, since at that time property owners owed a duty of ordinary care only to business "invitees" and owed only some lesser duty of care to "licensees," i.e., social guests. Any parallel between the duty of care prescribed by the guest statute and that applicable to property owners was quickly erased, however, for by the mid-1930's courts had already recognized that when a landowner undertook any "active operation" he bore a duty to exercise due care towards trespassers, licensees and invitees alike (see *Hamakawa* v. *Crescent Wharf etc. Co.* (1935) 4 Cal.2d 499, 501-502 [50 P.2d 803]; *Oettinger* v. *Stewart* (1944) 24 Cal.2d 133, 138-139 [148 P.2d 19, 156 A.L.R. 1221]). The operation of an automobile, of course, constituted the paradigm case of an "active operation" which would bring the ordinary due care standard into play. (See *Oettinger* v. *Stewart* (1944) 24 Cal.2d 133, 138 [148 P.2d 19, 156 A.L.R. 1221].) Thus, for more than three decades California's guest statute has singled out automobile guests for harsher treatment and less protection than guests receive generally.

In any event, the present constitutionality of the guest statute's classification scheme must be evaluated in light of the contemporary treatment accorded similarly situated individuals. At present, of course, Civil Code section 1714's prescription of a general duty of "ordinary care" governs a landowner's duty to all those injured on his property, social guests and business invitees alike. (*Rowland* v. *Christian* (1968) 69 Cal.2d 108 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496].) Against this background, the guest statute, by singling out automobile guests for a special burden, creates an arbitrary and unreasonable classification.

[7]Although by straining our imagination we could possibly derive a theoretically "conceivable," but totally unrealistic, state purpose that might support this classification scheme, we do not believe our constitutional adjudicatory function should be governed by such a highly fictional approach to statutory purpose. We recognize that in past years several federal equal protection cases have embraced such an excessively artificial analysis in applying the traditional "rational basis" equal protection test. (See, e.g., *Kotch* v. *Pilot Comm'rs.* (1947) 330 U.S. 552 [91 L.Ed. 1093, 67 S.Ct. 910]; *Goesaert* v. *Cleary* (1948) 335 U.S. 464 [93 L.Ed. 163, 69 S.Ct. 198].) More recently, however, the United States Supreme Court has drawn back from such an absolutely deferential position and has again demanded that statutory classifications bear some substantial relationship to an actual, not "constructive," legislative purpose. As recently as this past term, for example, the Supreme Court found statutory classification schemes invalid under the "rational relation" test in seven separate cases. (See *James* v. *Strange* (1972) 407 U.S. 128 [32 L.Ed.2d 600, 92 S.Ct. 2027]; *Jackson* v. *Indiana* (1972) 406 U.S. 715 [32 L.Ed.2d 435, 92 S.Ct. 1845]; *Weber* v. *Aetna Casualty & Surety Co.* (1972) 406 U.S. 164 [31 L.Ed.2d 768, 92 S.Ct. 1400]; *Stanley* v. *Illinois* (1972) 405 U.S. 645 [31 L.Ed.2d 551, 92 S.Ct. 1208]; *Humphrey* v. *Cady* (1972) 405 U.S. 504 [31 L.Ed.2d 394, 92 S.Ct. 1048]; *Eisenstadt* v. *Baird* (1972) 405 U.S. 438 [31 L.Ed.2d 349, 92 S.Ct. 1029]; *Reed* v. *Reed* (1971) 404 U.S. 71 [30 L.Ed.2d 225, 92 S.Ct. 251].) This record comes in marked contrast to the notable inactivity of prior years. Professor Gunther has pointed out this development in the application of equal protection principles in a recent law review article, and has

ute's present classification, "persons similarly situated with respect to the legitimate purpose of the law [do not] receive like treatment." (*Purdy & Fitzpatrick* v. *State of California* (1969) 71 Cal.2d 566, 578 [79 Cal.Rptr. 77, 456 P.2d 645, 38 A.L.R.3d 1194].)

Not only do we find no reasonable basis to draw a distinction between the automobile guest and other guests, but, as we shall show, the generosity of the host does not constitute a rational basis for removing a guest's protection from negligently inflicted injuries. As Justice Harlan observed in his dissent in *Glona* v. *American Guarantee Co.* (1968) 391 U.S. 73, 81 [20 L.Ed.2d 441, 447, 88 S.Ct. 1515], some "classifications are impermissible [under the equal protection clause] because they bear no intelligible proper relation to the consequences that are made to flow from them." Insofar as the guest statute removes a passenger's protection from negligently inflicted injury simply because he is a nonpaying guest, we think the provision exhibits the unconstitutional vice to which Justice Harlan alluded.

The "hospitality" rationale actually embodies two distinct strands of reasoning, both of which we must reject. In the first instance, the theory envisages the statute's classification scheme as simply providing a higher standard of care for passengers who pay, than for those who do not, justifying such a distinction as rationally reflective of a purportedly general legal principle that "you get what you pay for." In the second instance, the hospitality rationale deems the guest's suit against the host an inexcusable instance of ingratitude, and hence subject to legislative condemnation.

We recognize, of course, the rationality of prescribing a higher standard of care for paying customers than for nonpaying ones; the common carrier's duty to use "utmost care" (Civ. Code, § 2100) exemplifies this principle at work. Defendant's attempt to invoke this principle in defense of the guest statute, however, reflects a superficial, one-dimensional view of the statute's operation. The claimed invidiousness of the guest statute lies not in the fact that it draws some distinction between paying and nonpaying passengers, but rather in the fact that it penalizes guests by wholly depriving them of protection against negligent injury.

---

suggested that such movement may well herald a "newer equal protection" providing a "new bite" for the traditional "rational basis" test. (See Gunther, *Foreword: In Search of Evolving Doctrine on a Changing Court: A Model for a Newer Equal Protection* (1972) 86 Harv.L.Rev. 1.) Whatever the accuracy of Professor Gunther's prediction with respect to the interpretation of the federal equal protection clause, we believe that it would be inappropriate to rely on a totally unrealistic "conceivable" purpose to sustain the present statute in the face of our state constitutional guarantees. (See *Darcy* v. *Mayor etc. of San Jose* (1894) 104 Cal. 642, 645-649 [38 P. 500].)

Although defendant characterizes the guest statute's operation as following a common legal theme, no principle in our legal system dictates that one must pay a fee before he is protected from infliction of negligent injury. Indeed, our general state policy, embodied in Civil Code section 1714, provides the exact opposite. That section declares: "Everyone is responsible, not only for the result of his willful acts, but also for an injury occasioned to another by his want of ordinary care or skill in the management of his property or person, . . ." Given this underlying legal principle, "[t]he fact that the guest pays nothing for riding with the owner furnishes no reason why the negligence of the latter should be excused." (*Hewlett* v. *Schadel* (4th Cir. 1934) 68 F.2d 502, 507 [91 A.L.R. 743]; see, e.g., *Stevens* v. *Stevens* (1959) 355 Mich. 363, 369-370 [94 N.W.2d 858, 862].)

Indeed defendant's theory that only the paying rider should be compensated for negligent injury cannot be reconciled with the liability that now accrues in concrete analogous situations. If the defendant in the instant case had injured a pedestrian or a guest riding in another car, rather than this plaintiff, such person would have been fully protected from defendant's negligence even though he had paid no compensation. Thus the mere fact that a guest has not paid for the ride cannot serve as a rational basis to single him out for discriminatory treatment. As the New Jersey Supreme Court declared in a similar context, "We see no reason why the host should be less vigilant for his own guest than he must be for a guest in another car. The duty to exercise reasonable care is as appropriate in the one situation as in the other." (*Cohen* v. *Kaminetsky* (1961) 36 N.J. 276, 283 [176 A.2d 483, 487].) Thus we find no rational basis for protecting the non-fee-paying pedestrian or guest riding in another car and in withdrawing that protection from the non-fee-paying guest in the host's car.

A second common explanation for the hospitality justification rests on the thesis that a guest's lawsuit against his host constitutes the epitome of "ingratitude," and as such ought to be condemned.[8] As we explain below, however, this explanation is unpersuasive on two separate grounds: first, because widespread liability insurance has largely eliminated any notion of "ingratitude" that may have once adhered to a guest's suit against

---

[8]The early case of *Crawford* v. *Foster* (1930) 110 Cal.App. 81, 87 [293 P. 841], contains the classic statement of this thesis: "As the use of automobiles became almost universal, the proverbial ingratitude of the dog that bites the hand that feeds him, found a counterpart in the many cases that arose, where generous drivers, having offered rides to guests, later found themselves defendants in cases that often turned upon close questions of negligence. Undoubtedly the legislature, in adopting [the guest statute], reflected a certain natural feeling as to the injustice of such a situation."

his host, and second, because the deprivation of a guest's redress for negligence cannot rationally be justified by a desire to promote hospitality. We discuss each of these points in turn.

First, if the characterization of an injured guest's lawsuit as an act of "ingratitude" ever had general validity, its rationality has been completely eroded by the development of almost universal automobile liability insurance coverage in recent years. Whereas in the late 1920's and 1930's the statute's operation might realistically have been viewed as relieving most generous hosts from potentially great personal expense,[9] today, with the widespread prevalence of insurance coverage, it is the insurance company, and not the generous host, that in the majority of instances wins protection under the guest statute. Thus, in a day in which nearly 85 percent of automobile drivers carry liability insurance,[10] the statute can no longer sequester the defense that it is a necessary means to thwart "ungrateful" guests. In plain language, there is simply no notion of "ingratitude" in suing your host's *insurer.*

Indeed, the Wisconsin Supreme Court made this same point in a similar context over 10 years ago. In discarding a judicially created auto guest doctrine, the Wisconsin court observed that "the doctrine of limited liability seems to have been developed in sympathy for the host who had extended his hospitality to another. At that time it was evidently considered unfair to impose upon the individual host the burden of the injuries to the gratuitous guest. Liability insurance is widely prevalent today. In few cases will the [elimination of the guest doctrine] shift the burden of loss from the injured guest to the negligent host personally. In the great majority of cases it will shift part or all of the burden of loss from the injured individual to the motoring public. The policy concept that it is unfair to shift the burden from the injured person to his host . . . is no longer applicable." (*McConville* v. *State Farm Mutual Automobile Ins. Co.* (1962) 15 Wis.2d 374, 383 [113 N.W.2d 14].)

One of the most basic, and familiar, tenets of the common law is that "[w]hen the reason of a rule ceases, so should the rule itself." (Civ. Code,

---

[9] In the late 1920's automobile liability insurance was the exception rather than the rule among licensed drivers, with about one-fifth of all drivers covered. (See Elsbree & Roberts, *Compulsory Insurance Against Motor Vehicle Accidents* (1928) 76 U.Pa. L.Rev. 690, 691.)

[10] A recent publication of the California Department of Motor Vehicles reports that between November 1971 and November 1972, 83.1 percent of drivers involved in reported accidents held liability insurance. (Cal. Dept. of Motor Veh., Div. of Drivers Licenses, *Report of General Activities* (Nov. 1972) p. 9. See also U.S. Dept. of Transportation, Driver Behavior & Accident Involvement: Implications for Tort Liability (1970) pp. 201-205.)

§ 3510.) Reason and rationality, however, are not the preserves of the common law alone; as indicated above, they serve as a guiding standard in constitutional adjudication under our state and federal "equal protection" clauses as well. The governing constitutional test, again, is whether a statute's classification bears a rational relation to a legitimate state interest; a classification which once was rational because of a given set of circumstances may lose its rationality if the relevant factual premise is totally altered.

The recent case of *Milnot Co.* v. *Richardson* (S.D.Ill. 1972) 350 F.Supp. 221 exemplifies the above proposition. There a federal court found that in light of changed factual circumstances a provision of the Federal Filled Milk Act, which had been upheld against a constitutional attack by the United States Supreme Court in 1944, could no longer survive an equal protection challenge.[11] In invalidating the statute, the court observed that "the constitutionality of a statute predicated upon the existence of a particular state of facts may be challenged by showing to the court that those facts have ceased to exist." (350 F.Supp. at p. 224: cf. *Westbrook* v. *Mihaly* (1970) 2 Cal.3d 765, 788-792 [87 Cal.Rptr. 839, 471 P.2d 487], vacated on other grounds (1971) 403 U.S. 915 [29 L.Ed.2d 692, 91 S.Ct. 2224]; *Chastleton Corp.* v. *Sinclair* (1924) 264 U.S. 543, 547-548 [68 L.Ed. 841, 843-844, 44 S.Ct. 4051].) ■ Under this standard if the guest statute's operation could originally be justified as rationally related to an interest in protecting hosts from ingratitude, this purpose can no longer support the provision's constitutionality in light of present liability insurance coverage.

Second, aside from the basic changes wrought by the spread of automobile liability insurance, the guest statute's purpose of fostering hospitality cannot rationally justify the lowering of protection for the class of automobile guests. Several recent decisions of this court are closely in point.

In *Rowland* v. *Christian* (1968) 69 Cal.2d 108 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496], for example, this court examined the traditional common law tort doctrine which drew fine distinctions in the standard of care which a landowner owed to different categories of persons on his

---

[11] In *Milnot,* the court reviewed a provision of the Filled Milk Act under which plaintiff's product, Milnot, was placed into one classification while a variety of almost identical imitation milk and dairy products were placed into a separate category. In 1944, at the time of the initial court decision on the statute (*Carolene Products Co.* v. *U. S.* (1944) 323 U.S. 18 [89 L.Ed. 15, 65 S.Ct. 1, 155 A.L.R. 1371]) the latter category of products did not exist, but since that time these newer products had continually appeared on the market. The court held that in light of these changed circumstances, the act's classification of Milnot was irrational and consequently denied its producer equal protection of the law.

property; under these traditional rules, a business "invitee" obtained protection against ordinary negligence but a social guest or trespasser received a reduced degree of protection. After reviewing the numerous exceptions and legal fictions that had developed because of dissatisfaction with these rules, the *Rowland* court went to the heart of the matter and exposed the entire business invitee-social guest-trespasser classification scheme as irrational in contemporary society. The court declared, "A man's life or limb does not become less worthy of protection by the law nor a loss less worthy of compensation under the law because he has come upon the land of another without permission or with permission but without a business purpose." (69 Cal.2d at p. 118.) ▆ Just as it is unreasonable to lower the standard of care owed to a visitor on private property because such visitor is "only" a social guest rather than a "paying" invitee, it is unreasonable to single out automobile guests and to expose them to greater dangers from negligence than paying passengers; in automobiles, as on private property, "[r]easonable people do not ordinarily vary their conduct depending upon such matters, . . ." (69 Cal.2d at p. 118.)

The sentiment which found expression in the *Rowland* case also lay at the foundation of our court's earlier decisions in *Malloy* v. *Fong* (1951) 37 Cal.2d 356 [232 P.2d 241], and *Silva* v. *Providence Hospital* (1939) 14 Cal.2d 762 [97 P.2d 798], abolishing charitable immunity in California. The doctrine of charitable immunity rested on a basis quite analogous to the instant "hospitality" justification; the rationale was that because of the "generosity" of the charitable institution, a recipient of that institution's services could not properly demand protection from negligently inflicted injuries.

In *Silva* and *Malloy*, however, the court rejected this hypothesis as unreasonable; those who utilized charitable institutions—primarily hospitals—could not realistically be said to have consented to the charity's exemption from liability for negligence, nor could the state interest in promoting charities be said rationally to justify the withdrawal of protection from the charity's beneficiaries. Citing Civil Code section 1714, the *Malloy* court observed that it is the general policy in California to afford protection from negligence to everyone; moreover, the court emphasized, "[t]hat policy admits of no exception based upon the objectives, however laudable, of the tort feasor." (37 Cal.2d at p. 366.) As the *Silva* court declared: " 'It is a principle of law as well as of morals that men must be just before they are generous.' [Citation.]" (14 Cal.2d at p. 776.)

*Rowland, Malloy* and *Silva* teach that "however laudable" the motives of a hospitable host or generous charity, it is irrational to reward that generosity by subjecting beneficiaries to a greater risk of uncompensated injury

than is faced by other individuals; under this principle, the guest statute's classification scheme is clearly unreasonable. Defendant contends, however, that since *Rowland, Malloy* and *Silva* were all common law decisions, their reasoning cannot be compelling in the instant constitutional context. In recent years, however, the United States Supreme Court has had occasion to review under the federal equal protection clause a number of state statutory schemes which deprived a designated class of persons of a cause of action ostensibly to promote a legitimate state interest, and these cases demonstrate the applicability of the above precedents to the instant adjudication.

In *Glona* v. *American Guarantee Co.* (1968) 391 U.S. 73 [20 L.Ed.2d 441, 88 S.Ct. 1515], for example, the high court examined a Louisiana wrongful death statute which, while generally affording a cause of action to parents of deceased children, denied such a cause of action to a parent if the injured offspring were illegitimate; the statutory scheme thus singled out parents of illegitimate children for discriminatory treatment. Louisiana defended this classification scheme as rationally related to a state interest in discouraging the bearing of illegitimate children. The Supreme Court, while conceding the inherent legitimacy of the proffered state interest, declared: "[W]e see no possible rational basis (*Morey* v. *Doud,* 354 U.S. 457, 465-466) for assuming that if the natural mother is allowed recovery for the wrongful death of her illegitimate child, the cause of illegitimacy will be served. It would, indeed, be farfetched to assume that women have illegitimate children so that they can be compensated in damages for their death. A law which creates an open season on illegitimates in the area of automobile accidents gives a windfall to tortfeasors." (391 U.S. at p. 75 [20 L.Ed.2d at p. 443].) (See *Levy* v. *Louisiana* (1968) 391 U.S. 68 [20 L.Ed.2d 436, 88 S.Ct. 1509]; *Weber* v. *Aetna Casualty & Surety Co.* (1972) 406 U.S. 164 [31 L.Ed.2d 768, 92 S.Ct. 1400]; *Gomez* v. *Perez* (1973) 409 U.S. 535 [35 L.Ed.2d 56, 93 S.Ct. 872]; cf. Gunther, *Foreword: In Search of Evolving Doctrine on a Changing Court: A Model for a Newer Equal Protection* (1972) 86 Harv.L.Rev. 1, 20-24.)[12]

[12]In *Weber* v. *Aetna Casualty & Surety Co.* (1972) 406 U.S. 164 [31 L.Ed.2d 768, 92 S.Ct. 1400], the Supreme Court overturned a statutory provision of Louisiana's workmen's compensation laws which denied to unacknowledged illegitimate children the same recovery rights granted to legitimate children. In invalidating this provision as a denial of equal protection, the court explained: "The status of illegitimacy has expressed through the ages society's condemnation of irresponsible liaisons beyond the bonds of marriage. But visiting this condemnation on the head of an infant is illogical and unjust. Moreover, imposing disabilities on the illegitimate child is contrary to the basic concept of our system that legal burdens should bear some relationship to

By parity of reasoning, *Rowland, Malloy* and *Silva* demonstrate that it is irrational to assume that if a recipient of generosity is permitted recovery for negligent injuries, the cause of "ingratitude" will be served or the cause of "hospitality" will be plundered.[13] Thus, we conclude that by depriving automobile guests of a right of action for negligence which is afforded to all other passengers or pedestrians, the California guest statute draws an irrational classification condemned by both our federal and state Constitutions.

In sum, we have concluded that the hospitality justification (1) does not explain the distinction drawn between automobile guests and other guests, (2) does not constitute a rational ground for withdrawing a guest's right to recover for negligently inflicted injuries, and (3) in light of widespread automobile liability insurance coverage, is largely a myth today. For all of these reasons, we find that the statute's discriminatory treatment of auto guests cannot be upheld against plaintiff's constitutional attack on the basis of the hospitality justification.

3. ▆▆▆ *The "collusion prevention" rationale similarly does not provide a sufficient basis for the statute's wholesale elimination of all automobile guests' causes of action for negligently inflicted injury.*

We have determined above that the classifications drawn by California's automobile guest statute are not rationally related to a suggested statutory purpose of protecting hospitality. Consequently, the constitutionality of

---

individual responsibility or wrongdoing." (406 U.S. at p. 175 [31 L.Ed.2d at p. 779].) (Fn. omitted.)

In like manner, while the promotion of hospitality is clearly a permissible and worthwhile goal, pursuing that end by "visiting . . . condemnation on the head of a [guest] is illogical and unjust" and is similarly "contrary to the basic concept . . . that legal burdens should bear some relationship to individual responsibility or wrongdoing."

[13]Indeed, the characterization of a negligently injured guest's suit as an act of "ingratitude"—a characterization on which the "hospitality" rationale is premised—is fundamentally inconsistent with California's overriding legislative policy in this area, which seeks to insure compensation for all innocent auto accident victims. As numerous cases of this court have emphasized, the public policy underlying California's Financial Responsibility Law (Veh. Code, § 16000 et seq.) "is clearly discernible: a desire on the part of the . . . . Legislature to not only prevent the astronomical accident toll in this state, but also to provide compensation for those injured through no fault of their own." (*Interinsurance Exchange* v. *Ohio Cas. Ins. Co.* (1962) 58 Cal.2d 142, 154 [23 Cal.Rptr. 592, 373 P.2d 640]; see, e.g., *Barrera* v. *State Farm Mut. Automobile Ins. Co.* (1969) 71 Cal.2d 659, 670-672 [79 Cal.Rptr. 106, 456 P.2d 674]; *Continental Cas. Co.* v. *Phoenix Constr. Co.* (1956) 46 Cal.2d 423, 434 [296 P.2d 801, 57 A.L.R.2d 914].) As we recognized in *Atlantic Nat. Ins. Co.* v. *Armstrong* (1966) 65 Cal.2d 100, 106 [52 Cal.Rptr. 569, 416 P.2d 801]: "This goal is no less subverted by limiting the class of persons whose injuries are compensable than by limiting the class of drivers who are insured."

the guest statute must stand or fall on whether the provision's classification scheme bears a substantial and rational relation to the second proposed objective of the statute: the preclusion of collusive lawsuits against insurance companies.

Although, as noted above, early California cases tended to view the primary purpose of the section as the protection of hospitality (see, e.g., *Crawford* v. *Foster* (1930) 110 Cal.App. 81, 87 [293 P. 841]), some commentators have suggested that the principal basis for such statutes has always been the protection of insurers against fraudulent litigation. (See, e.g., Prosser, The Law of Torts (4th ed. 1971) § 34, p. 187; Georgetta, *The Major Issues in a Guest Case,* 1954 Ins.L.J. 583; White, *The Liability of an Automobile Driver to a Non-paying Passenger* (1934) 20 Va.L.Rev. 326, 332-333.) The political dynamics underlying the enactment of guest statutes throughout the nation appear to bear out the academics' position, for, as Professor Prosser reports, the statutes came into being in the late 1920's and 1930's as a "result of persistent and effective lobbying on the part of liability insurance companies." (Prosser, The Law of Torts (4th ed. 1971) § 34, p. 187; see Tipton, *Florida's Automobile Guest Statute* (1958) 11 U.Fla.L.Rev. 287, 287-288; Note (1956) 5 Utah L.Rev. 257, 258 and fn. 10.)[14]

To effectuate its 'purpose of eliminating collusive lawsuits, the guest statute draws a distinction between automobile riders on the basis of whether or not a passenger "compensates" his driver for the ride: those riders who "pay" for their ride are not affected by the statute, but riders who do not bestow a benefit on their host, i.e., who ride for free, are denied a cause of action in negligence. The theory behind this "compensation" classification appears to be that the driver who gives a free ride to a passenger does so because of a close relationship with his guest; because of the presumed closeness of this relationship, the driver may falsely admit liability so that his guest may collect from the driver's insurance company. To combat this risk of potential fraud, the guest statute eliminates all causes of action in negligence for automobile guests.

The present instance is by no means the first time this court has been

---

[14]In California the primacy of the "collusion prevention" rationale has been evident since at least 1961, when the Legislature amended the guest statute to preclude recovery by a car owner who, when riding as a passenger in his own car, is injured by the negligence of the driver of the car. (Stats. 1961, ch. 1600, p. 3429.) This amendment demonstrates that the Legislature was not primarily interested in protecting hospitality, for in the circumstances covered by the amendment the injured passenger-owner is in reality the hospitable party, and the negligent driver the guest; in denying recovery to such an injured host, the legislation is obviously directed at precluding collusive lawsuits initiated by the host.

called on to assess the rationality of a rule which, in order to prevent collusive lawsuits, broadly eliminates causes of action of an entire class of individuals, some of whom may institute collusive suits, but many of whom have entirely valid causes of action. This court, indeed, over the past two decades, has decided a series of cases which have rejected just such a rationale.

*Emery* v. *Emery* (1955) 45 Cal.2d 421 [289 P.2d 218] is the seminal decision of this line of cases. In *Emery* two sisters brought suit for injuries resulting from their brother's negligent operation of an automobile, and defendant, represented by his insurer, sought refuge in the long-standing doctrine of intrafamily tort immunity. Defendant claimed that a total immunity was justified because of the potential of fraudulent lawsuits between some family members. The court responded: " 'The courts may and should take cognizance of fraud and collusion when found to exist in a particular case. However, the fact that there may be greater opportunity for fraud or collusion in one class of cases than another does not warrant courts of law in closing the door to all cases of that class. Courts must depend upon the efficacy of the judicial processes to ferret out the meritorious from the fraudulent in particular cases. [Citation.]' " (45 Cal.2d at p. 431.)[15]

Seven years later, in *Klein* v. *Klein* (1962) 58 Cal.2d 692, 695-696 [26 Cal.Rptr. 102, 376 P.2d 70], our court reiterated this reasoning in rejecting a claim that the possibility of fraudulent lawsuits between a husband and wife served as a sufficient justification for barring *all* interspousal negligence actions. Most recently in *Gibson* v. *Gibson* (1971) 3 Cal.3d 914, 919-920 [92 Cal.Rptr. 288, 479 P.2d 648] we invoked the teachings of *Emery* and *Klein* in rejecting a parallel contention that the broad parental immunity doctrine, which barred all negligence actions by children against their parents, could be sustained on a "collusion prevention" rationale. The *Gibson* court, while conceding that "some danger of collusion cannot be denied," observed that "the peril is no greater when a minor sues his parent than in actions between husbands and wives, brothers and sisters or adult children and parents, all of which are permitted in

---

[15]It is true that in dictum the *Emery* court did indicate approval for the legislatively created auto guest statute. (45 Cal.2d at p. 432.) The issue of the guest statute's constitutionality, however, was clearly not before the *Emery* court, and nothing indicates the court so much as considered the guarantee of equal protection of the laws. Thus, the court's discussion of the guest statute is clearly neither binding on, nor particularly relevant to, our instant inquiry. These same observations hold true for the brief references to the auto guest statute in *Klein* v. *Klein* (1962) 58 Cal.2d 692, 694, footnote 1 [26 Cal.Rptr. 102, 376 P.2d 70] and *Gibson* v. *Gibson* (1971) 3 Cal.3d 914, 920, footnote 9 [92 Cal.Rptr. 288, 479 P.2d 648].

California." (See also *Dillon* v. *Legg* (1968) 68 Cal.2d 728, 735-739 [69 Cal.Rptr. 72, 441 P.2d 912, 29 A.L.R.3d 1316].)

■ These three cases, *Emery*, *Klein* and *Gibson*, dealing with the entire range of intrafamilial immunities, establish that it is unreasonable to eliminate causes of action of an entire class of persons simply because some undefined portion of the designated class may file fraudulent lawsuits. As we point out below, the guest-passenger classification scheme at issue in the instant case is even less defensible and less rational than any of the familial classifications invalidated by our earlier cases.

First, the "paying-nonpaying," or "passenger-guest" distinction drawn by the guest statute is a far grosser indicant of the likelihood of collusion than any of the categories involved in the family immunity cases. Thus, on the one hand, the "paying passenger" category, whose members are permitted to recover for negligent injuries, is defined by the statute to include anyone who gives any "compensation" whatsoever; this classification frequently encompasses close friends or relatives who, for example, share expenses through "car pool" arrangements (see, e.g., *Bozanich* v. *Kenney* (1970) 3 Cal.3d 567 [91 Cal.Rptr. 286, 477 P.2d 142]; *Nevarez* v. *Carrasco* (1969) 1 Cal.3d 518 [82 Cal.Rptr. 721, 462 P.2d 577]) or provide some marginal benefit to the driver (see, e.g., *Kruzie* v. *Sanders* (1943) 23 Cal.2d 237 [143 P.2d 704]), and yet who pose as great a risk of collusion as nonpaying guests. On the other hand, the "nonpaying guest" classification ensnares many persons, such as hitchhikers, with whom the driver shares no close relationship and with respect to whom the danger of collusion is remote.

Thus, not only does the guest statute eliminate the great number of valid lawsuits between relatives and close friends—the vice inherent in the earlier family immunity doctrines—but, in addition, the provision irrationally (1) permits negligence suits by many who have no less reason to collude than those barred from suing, and (2) eliminates causes of action of many individuals as to whom there is no reasonable likelihood of collusion.

Second, the guest statute's classifications are less rational than those present in prior cases on yet another ground. The "collusion" rationale assumes that the parties—driver and guest—are willing to perjure themselves on the negligence issue, and thus that the guest must be entirely precluded from prosecuting any lawsuit. Under the terms of the guest statute, however, the rider and driver can escape the statute's bar, and thwart the "anti-collusion" purpose, simply by colluding on the issue of whether the rider provided any "compensation" for the ride. (See 2 Harper

and James, The Law of Torts (1956) § 16.15, p. 961.) This ease of circumvention—aggravating the unfairness of the disparate treatment of honest individuals—was not present in the family immunity context, for the crucial family relationships relevant in those cases could not readily be falsified.

We recognize, of course, that our prior decisions in *Emery, Klein* and *Gibson* were all common law decisions, and that in testing the adequacy of the "collusion prevention" rationale in the instant case we must measure the guest statute's classification scheme against the relevant constitutional standards. The primary concern of the "equal protection" guarantee of our state and federal Constitutions, however, is that "persons similarly situated with respect to the legitimate purpose of the law receive like treatment" (*Purdy & Fitzpatrick* v. *State of California* (1969) 71 Cal.2d 566, 578 [79 Cal.Rptr. 77, 456 P.2d 645, 38 A.L.R.3d 1194]; *Reed* v. *Reed* (1971) 404 U.S. 71, 75-76 [30 L.Ed.2d 225, 229-230, 92 S.Ct. 254]), and we believe that, just as in *Emery, Klein* and *Gibson,* the guest statute's wholesale elimination of causes of action fails to provide such "like treatment" for "similarly situated" individuals.

Instead, by broadly prohibiting *all* automobile guests from instituting causes of action for negligence because a small segment of that class may file collusive suits, the guest statute presents a classic case of an impermissibly overinclusive classification scheme, that is, a scheme in which a statute's classification "imposes a burden upon a wider range of individuals than are included in the class of those tainted with the mischief at which the law aims." (Tussman and tenBroek, *The Equal Protection of the Laws* (1949) 37 Cal.L.Rev. 341, 351.) Such a statute does not treat similarly situated individuals in like manner, but instead reaches out beyond the individuals "tainted with the mischief" at which a statute is directed, and imposes its burden on innocent individuals who do not share the condemning characteristics. (See, e.g., *Stanley* v. *Illinois* (1972) 405 U.S. 645, 654-657 [31 L.Ed.2d 551, 560-562, 92 S.Ct. 1208]; *Shapiro* v. *Thompson* (1969) 394 U.S. 618, 637 [22 L.Ed.2d 600, 616-617, 89 S.Ct. 1322]; *Rinaldi* v. *Yeager* (1966) 384 U.S. 305, 310 [16 L.Ed.2d 577, 581, 86 S.Ct. 1497]; *Carrington* v. *Rash* (1965) 380 U.S. 89, 94-97 [13 L.Ed.2d 675, 679-681, 85 S.Ct. 775]; cf. *Eisenstadt* v. *Baird* (1972) 405 U.S. 438, 451 [31 L.Ed.2d 349, 361, 92 S.Ct. 1029].)[16] As Professors Tussman and tenBroek have observed, "[Overin-

---

[16]In *Carrington* v. *Rash* (1965) 380 U.S. 89 [13 L.Ed.2d 675, 85 S.Ct. 775], for example, the court overturned as an impermissible overinclusive classification a provision of the Texas Constitution which denied the right to vote in state elections to all servicemen who had moved to Texas during the course of their military duty.

clusive] classifications fly squarely in the face of our traditional antipathy to assertions of mass guilt and guilt by association." (Tussman & tenBroek, *The Equal Protection of the Laws* (1949) 37 Cal.L.Rev. 341, 351-352; see also Note, *Developments in the Law—Equal Protection of the Laws* (1969) 82 Harv.L.Rev. 1065, 1086-1087.)

As we have seen, the guest statute embodies just such an overinclusive classification scheme. Instead of confining its disability to those who actually institute collusive suits, the provision reaches out beyond such persons and burdens the great number of honest automobile guests. Moreover, as noted above, the statute also extends its burden to some, such as hitchhikers, who pose no reasonable danger of collusion at all.[17] Although the constitutional provisions do not require absolute precision in the designation of classifications, they do not tolerate classifications which are so grossly overinclusive as to defy notions of fairness or reasonableness. We believe that in barring suits by all automobile guests simply to protect insurance companies from some collusive lawsuits, the guest statute exceeds the bounds of rationality and constitutes a denial of equal protection.[18]

While recognizing that the state possessed a legitimate interest in limiting the franchise to bona fide residents, and that many recently arrived servicemen might not meet that requirement, the court concluded that these circumstances could not justify the wholesale disenfranchisement of all servicemen, including those who could establish that Texas was their true residence. "By forbidding a soldier ever to controvert the presumption of nonresidence, the Texas Constitution imposes an invidious discrimination in violation of the Fourteenth Amendment." (380 U.S. at p. 96 [13 L.Ed.2d at p. 680].)

[17]Moreover, the guest statute's "compensation" criterion is simultaneously underinclusive with respect to the prevention of fraud. As pointed out above, because the statute permits recovery whenever any "compensation," however meagre, is bestowed upon the driver (see, e.g., *Kruzie* v. *Sanders* (1943) 23 Cal.2d 237 [143 P.2d 704] (passenger providing benefit of assistance in selecting Christmas presents)), a large number of persons who pose as great a threat of collusion as those disabled by the statute are permitted to escape the statute's ban. This underinclusive characteristic constitutes a further illustration that persons similarly situated with respect to the purpose of the law do not receive like treatment. (See, e.g., *Rinaldi* v. *Yeager* (1966) 384 U.S. 305, 309-310 [16 L.Ed.2d 577, 580-581, 86 S.Ct. 1497].)

[18]The irrationality of the statute's wholesale elimination of causes of action is further pointed up by the alternative means which California presently employs to prevent the filing of such fraudulent claims. (Cf. *Shapiro* v. *Thompson* (1969) 394 U.S. 618, 637 [22 L.Ed.2d 600, 616-617, 89 S.Ct. 1322].) Thus, for example, the Insurance Code contains a specific provision imposing criminal sanctions for the filing of fraudulent insurance claims (Ins. Code, § 556) and the Penal Code proscribes and punishes the giving of untruthful testimony or evidence in any civil action (Pen. Code, §§ 118, 126, 132-137.) Finally, of course, any evidence presented at trial is subject to the scrutiny of the trier of fact, who observes the demeanor of witnesses and will naturally consider the presence of close relationships which might tend to induce false testimony.

The recent case of *Glona* v. *American Guarantee Co.* (1968) 391 U.S. 73 [20 L.Ed.2d 441, 88 S.Ct. 1515] confirms this conclusion. As noted above, the *Glona* decision addressed a Louisiana wrongful death statute which denied a cause of action to the parents of a deceased child if the child were illegitimate. In defense of the statutory classification scheme, the state argued inter alia that the legitimacy requirement was a proper means of preventing fraudulent lawsuits brought by individuals who would falsely claim to be the deceased child's parents. The Supreme Court, however, gave short shrift to this argument, stating: "Opening the courts to suits of this kind may conceivably be a temptation to some to assert motherhood fraudulently. That problem, however, concerns burden of proof. Where the claimant is plainly the mother, the state denies equal protection of the laws to withhold relief merely because the child, wrongfully killed, was born to her out of wedlock." (391 U.S. at p. 76 [20 L.Ed.2d at p. 444]. See also *Gomez* v. *Perez* (1973) 409 U.S. 535 [35 L.Ed.2d 56, 93 S.Ct. 872].)

In short, "compensation" is not a factor that assures dishonesty in its absence, or that guarantees honesty in its presence; in basing its classification scheme on this factor the guest statute fails to accord equal treatment to those who are similarly situated with respect to its goal of the prevention of collusion.

4. *The numerous statutory exceptions have rendered recovery or lack of recovery under the guest statute largely fortuitous, and add another element of irrationality to the statutory scheme.*

Thus far we have measured the designated purposes of the guest statute—the protection of hospitality and the prevention of collusive suits—against only the primary classifications which the statute draws between "guests" and "paying passengers" and between auto guests and other guests. We have found that the disparate treatment flowing from these basic classifications does not rationally relate to the ostensible statutory purposes. As noted at the outset, however, the California guest statute does not even treat all injured automobile guests alike, but instead, as a result of a series of limiting statutory "loopholes," imposes its burden only on a portion of injured automobile guests. As we discuss below, these statutory exceptions add yet another element of irrationality to the provision's classification scheme, for they, too, are totally unrelated to either the "hospitality" or "anti-collusion" theme. Their presence in the statute has given birth to a series of cases which highlights the illogic and fortuity of our guest statute's contemporary operation.

We turn to the governing language of the statute. In addition to limiting its coverage to automobile guests, section 17158 conditions the denial of a cause of action for negligence on three independent matters: the injury must take place (1) "during the ride," (2) "in any vehicle" and (3) "upon the highway." The application of these three limiting clauses in concrete cases have produced varying legal results under almost identical factual circumstances.

In applying the "during the ride" limitation, for example, recovery has been denied to riders injured in the precise act of transportation, but recovery has been permitted when the need to check the vehicle's tires momentarily interrupted the "ride" and a nonpaying passenger sustained injuries when struck by the open door of a car which rolled from its stopped position. (*Boyd* v. *Cress* (1956) 46 Cal.2d 164 [293 P.2d 37]. See also *Harrison* v. *Gamatero* (1942) 52 Cal.App.2d 178, 182 [125 P.2d 904].) Similarly, the "in any vehicle" condition has operated to bar recovery by an auto guest injured while physically inside the vehicle, but has allowed recovery by a nonpaying passenger who is injured while having one foot on the ground and one foot on the running board of a lurching car. (*Prager* v. *Israel* (1940) 15 Cal.2d 89 [98 P.2d 729]. See also *Elisalda* v. *Welch's Sand & Gravel Co.* (1968) 260 Cal.App.2d 46, 52-53 [67 Cal.Rptr. 57]; *Smith* v. *Pope* (1942) 53 Cal.App.2d 43 [127 P.2d 292]; *Moreas* v. *Ferry* (1933) 135 Cal.App. 202 [26 P.2d 886] (cranking car).)

Finally, the "upon the highway" language of the statute has led to a differentiation in treatment between auto guests injured in a vehicle moving on a public highway or highway shoulder (e.g., *Olson* v. *Clifton* (1969) 273 Cal.App.2d 359, 366-370 [78 Cal.Rptr. 296]), and those guests injured in an accident occurring on private property or on a privately owned road. (*O'Donnell* v. *Mullaney* (1967) 66 Cal.2d 994 [59 Cal.Rptr. 840].) As this court observed in *O'Donnell,* in view of the numerous technical limitations incorporated into the guest statute, "the relationship [giving rise to liability] between the driver and occupant of a motor vehicle may fluctuate during the course of a single trip, as circumstances bring them within or without the language of the statute." (66 Cal.2d at p. 998.)

In sum, the statute as presently written and applied distinguishes those automobile guests who may recover for negligence from those guests who may not on the basis of (1) whether or not the journey has come to a momentary halt, (2) whether the guest was physically located inside or

outside the car and (3) whether the car was on a public highway or on private land.[19]

None of these three distinctions, however, bears the remotest relation to either the objective of protecting hospitality or to the purpose of preventing collusive lawsuits. Clearly, the hospitality of a host does not vary as the car halts and then progresses in the course of the trip, as the guest steps inside or outside of the car, or as the car enters or leaves the public highway. Similarly, the ability or inclination of a host to confess negligence does not turn on the car's location or temporary immobility, or on the guest's temporary presence outside the car. Given the complete lack of relevance between the distinctions which the statute constructs and the purposes of the enactment, we conclude that the classifications lack rationality.[20]

---

[19]One critical commentator has satirically summarized the haphazard operation of the guest statute through the following "perhaps-hypothetical case."

"Husband and Wife enter the family car in the driveway for the purpose of driving to the post office and mailing a birthday card. If Husband backs negligently down the driveway and hits a lamp post before reaching the street, injuring Wife, Wife can recover against Husband. No danger of collusion there and no worry about ingratitude. If, however, he makes it to the street and backs into a car parked at the opposite curb, the guest statute applies and he and his insurance company have to be protected from Wife's ingratitude.

"If he successfully negotiates that street, and reaches the post office, where he double parks, with Wife getting out of the car to run across the street and mail the card, he is liable for his ordinary negligence in failing to warn her if he sees that she is running into the stream of traffic, where she is hit by another car. If, however, she makes it back and he pulls out into the stream of traffic, he is not liable for ordinary negligence.

"Of course, it should be remembered that all of this might be academic if Wife were going along to advise on Christmas shopping or selection of olives, in which case it would possibly be a business trip; but not if the couple were on their way to get married, which is a mere courtesy of the road." (Lascher, *Hard Laws Make Bad Cases —Lots of Them (The California Guest Statute)* (1968) 9 Santa Clara Law. 1, 14 (fns. omitted).)

[20]We reject the contention that this irrationality has been manufactured by judicial interpretation. (See Comment, *Judicial Nullification of Guest Statutes* (1968) 41 So. Cal.L.Rev. 884.) The Legislature, and not the judiciary, selected the limiting terms which the statute employs. Moreover, in creating an immunity from the general rule of liability for negligence, the Legislature was well aware of—and did not alter—the established doctrine that such immunities form the exception, not the rule, and are to be narrowly construed. (See, e.g., *Johnson* v. *State of California* (1968) 69 Cal.2d 782, 798 [73 Cal.Rptr. 240, 447 P.2d 352]; *Self* v. *Self* (1962) 58 Cal.2d 683, 689 [26 Cal.Rptr. 97, 376 P.2d 65].) Finally, the Legislature has observed four decades of consistent judicial application of the strict construction principle to the guest statute (e.g., *Bozanich* v. *Kenney* (1970) 3 Cal.3d 567, 570 [91 Cal.Rptr. 286, 477 P.2d 142]; *Williams* v. *Carr* (1968) 68 Cal.2d 579, 587 [68 Cal.Rptr. 305, 440 P.2d 505]; *O'Donnell* v. *Mullaney* (1967) 66 Cal.2d 994, 998 [59 Cal.Rptr. 840, 429 P.2d 160]; *Prager* v. *Israel* (1940) 15 Cal.2d 89, 93 [98 P.2d 729]; *McCann* v. *Hoffman* (1937) 9 Cal.2d 279, 282-283 [70 P.2d 909]), and has not acted to overturn these decisions.

The current erratic and fortuitous operation of California's guest statute finds a distinct parallel in the operation of California's governmental immunity doctrine prior to the recent comprehensive legislative reform. In *Muskopf* v. *Corning Hospital Dist.* (1961) 55 Cal.2d 211 [11 Cal.Rptr. 89, 359 P.2d 457], our court undertook an overview of the prevailing governmental immunity doctrine and chronicled some of the illogical distinctions resulting from the myriad of existing disparate rules. The court observed: "Some who are injured by governmental agencies can recover, others cannot: one injured while attending a community theatre in a public park may recover [citation], but one injured in a children's playground may not [citation]; for torts committed in the course of a 'governmental function' there is no liability, unless the tort be classified as a nuisance [citation]. The illogical and inequitable extreme is reached in this case: we are asked to affirm a rule that denies recovery to one injured in a county or hospital district hospital, although recovery may be had by one injured in a city and county hospital. [Citation.]" (55 Cal.2d at pp. 216-217.) Concluding from this review that the governmental immunity doctrine "has become riddled with exceptions, both legislative [citations] and judicial [citations] and [that] the exceptions operate so illogically as to cause serious inequality," (55 Cal.2d at p. 216) the *Muskopf* court discarded the entire governmental immunity doctrine.

Although the *Muskopf* decision itself did not rest on constitutional grounds, because the governmental immunity doctrine at issue was of judicial rather than legislative creation, the opinion's reasoning—relying on the unequal treatment afforded similarly situated persons—parallels the constitutional principle embodied in our state and federal equal protection clauses. The case *of Harvey* v. *Clyde Park Dist.* (1965) 32 Ill.2d 60 [203 N.E.2d 573] demonstrates this point. In *Harvey,* a minor child injured in a park department playground challenged a governmental immunity statute which insulated the park district from liability. The Illinois Supreme Court, testing the governmental immunity statutory scheme against the requirements of a state constitutional "equal protection" provision similar to the applicable California provision,[21] found the challenged statutory pattern

---

From this long history of legislative acquiescence we must assume that the Legislature intended that the guest statute undergo the strict interpretation which the California courts have accorded it.

[21]The section of the Illinois Constitution applied in *Harvey* provides: "The general assembly shall not pass local or special laws in any of the following enumerated cases . . . Granting to any corporation, association or individual any special or exclusive privilege, immunity or franchise whatever." (Ill. Const., art. IV, § 22.) Article I, section 21 of the California Constitution declares: "No . . . citizen, or class of citizen, [shall] be granted privileges or immunities which, upon the same terms, shall not be granted to all citizens."

unconstitutional on grounds equivalent to those underlying the *Muskopf* decision.

The *Harvey* court reasoned: "If the child had been injured on a slide negligently maintained by a school district or by the sovereign State, limited·recovery is permitted. But if the child had been injured on a slide negligently maintained by a forest preserve district, or, as was actually the case, by a park district, the Legislature has barred recovery. In this pattern there is no discernible relationship to the realities of life. We hold, therefore, that the statute relied upon by the defendant is arbitrary, and unconstitutionally discriminates against the plaintiff." (32 Ill.2d at p. 67 [203 N.E.2d at p. 577]; cf. *Eisenstadt* v. *Baird* (1972) 405 U.S. 438, 449 [31 L.Ed.2d 349, 359, 92 S.Ct. 1029].)

The numerous statutory exceptions in the guest statute—making a guest's recovery turn on the mobility or immobility of the vehicle, the physical location of the guest in or outside the car or the physical location of the vehicle on a private or public highway—similarly bear "no discernible relationship to the realities of life." As in *Muskopf,* the numerous cases arising under the guest statute over the past four decades have demonstrated that the statutory "exceptions operate so illogically as to cause serious inequality." (55 Cal.2d at p. 216.) ■ Under these circumstances, we conclude that the statute's limiting provisions constitute a further denial of equal protection.

## 5. *Conclusion*

In summary, we have concluded that the classifications which the guest statute creates between those denied and those permitted recovery for negligently inflicted injuries do not bear a substantial and rational relation to the statute's purposes of protecting the hospitality of the host-driver and of preventing collusive lawsuits. ■ We therefore hold that, as applied to a negligently injured guest, the guest statute violates the equal protection guarantees of the California and United States Constitutions.

Our holding, of course, in no way detracts from the principle that "the great office of statutes is to remedy defects in the common law as they are developed, and to adapt it to the changes of time and circumstances." (*Munn* v. *Illinois* (1877) 94 U.S. 113, 134 [24 L.Ed. 77, 87].) Nothing we have said is intended to imply that only the common law rules of negligence can govern automobile liability. ■ We hold only that in undertaking any alteration or reform of such rules the Legislature may not irrationally single out one class of individuals for discriminatory treatment.

From their very inception, automobile guest statutes have been the sub-

ject of severe criticism, both academic and judicial.[22] In our view, the widespread antipathy to such statutes is in large part a reflection of the irrationality and unfairness of these legislative schemes, which strip the single class of automobile guests of any protection from negligently inflicted injuries. We have concluded that such irrational discrimination cannot be squared with the applicable constitutional standards.

The judgment is reversed and the cause is remanded to the superior court with instructions to permit plaintiff to proceed with his cause of action in negligence.

Wright, C. J., McComb, J., Mosk, J., Burke, J., and Sullivan, J., concurred.

---

[22]See, e.g., Prosser, Law of Torts (4th ed. 1971) section 34, pages 186-187; Lascher, *Hard Laws Make Bad Cases—Lots of Them (The California Guest Statute)* (1968) 9 Santa Clara Law. 1; Gibson, *Guest Passenger Discrimination* (1968) 6 Alberta L.Rev. 211; Note, *The Case Against the Guest Statute* (1966) 7 Wm. & Mary L.Rev. 321; Note, *Problems of Recovery under the Iowa Guest Statute* (1962) 47 Iowa L.Rev. 1049; Pedrick, *Taken for a Ride: The Automobile Guest and Assumption of Risk* (1961) 22 La.L.Rev. 90; Comment. *The Illinois Guest Statute: An Analysis & Reappraisal* (1959) 54 Nw.U.L.Rev. 263; Tipton, *Florida's Automobile Guest Statute* (1958) 11 U.Fla.L.Rev. 287; Mundt. *The South Dakota Guest Statute* (1957) 2 So.Dakota L.Rev. 70; White, *The Liability of an Automobile Driver to a Non-Paying Passenger* (1934) 20 Va.L.Rev. 326; *Clark v. Clark* (1966) 107 N.H. 351, 356-357 [222 A.2d 205. 210]; *Cohen v. Kaminetsky* (1961) 36 N.J. 276, 283 [176 A.2d 483, 487]; *Stevens v. Stevens* (1959) 355 Mich. 363 [94 N.W.2d 858]; *Hewlett v. Schadel* (4th Cir. 1934) 68 F.2d 502.