[L.A. No. 30865. Aug. 16, 1978.]

GERTRUDE COOPER, Plaintiff and Appellant, v.
CLAUDE LEWIS BRAY et al., Defendants and Appellants;
RUTH TASHMA, Defendant and Respondent.

**COUNSEL**

Green, Royce & Seaman, Irving Green and Leonard Sacks for Plaintiff and Appellant.

Buck, Molony, Nimmo & Ammirato, Buck & Smith, Mark D. Rutter and Richard E. Smith for Defendants and Appellants.

Spray, Gould & Bowers and Michael R. Brown as Amici Curiae on behalf of Defendants and Appellants.

Edward L. LeBerthon and Fernandes & LeBerthon for Defendant and Respondent.

**OPINION**

**TOBRINER, J.**—For the third time in recent years, we are confronted with the question of whether section 17158 of the Vehicle Code violates the equal protection clause of our state or federal Constitution (Cal. Const., art. I, § 7; U.S. Const., 14th Amend.) by singling out, from the wide range of automobile accident victims, one narrow class—injured passengers who happen to own the car in which they are injured—and barring this, and only this, class of victims from obtaining recovery from drivers who negligently caused their injuries.

In April 1975, our court initially concluded in *Schwalbe* v. *Jones* (1975) (Cal.), that this statutory provision violated the constitutional equal protection guarantee. Thereafter, however, we granted a rehearing in *Schwalbe* and, upon rehearing, a majority of the court sustained the statute against constitutional challenge. (*Schwalbe* v. *Jones* (1976) 16 Cal.3d 514 [128 Cal.Rptr. 321, 546 P.2d 1033].) After a careful reexamination of the issue, we have concluded that our original constitutional determination was correct and that, under the appropriate governing equal protection standard, the disparate treatment mandated by section 17158 cannot be constitutionally sustained. Since the trial court in the instant case proceeded upon the assumption that section 17158 was in fact unconstitutional, we conclude that its judgment should be affirmed.

### 1. *The facts*

On February 13, 1971, plaintiff Gertrude Cooper, age 64, was seriously injured in an automobile accident while riding as a passenger in her own car. At the time of the accident, defendant Claude Lewis Bray, age 65, an employee of the service station where Miss Cooper regularly took her car for servicing, was driving the vehicle. Miss Cooper had been a customer of the Colonial Oil (Arco) service station where Bray worked for five or six years prior to the accident, and on a number of occasions Mr. Bray had picked up Miss Cooper's car at her residence (located a block or two from the station), had driven it to the station for repairs, and had then returned the car to her home. On two or three occasions, Mr. Bray had thereafter driven the car back to the station with Miss Cooper riding as a passenger, and Miss Cooper had then driven the car back to her own home alone.

On February 12, 1971, the day before the accident, Miss Cooper called the station because her car had stalled as she entered the driveway of her residence. She arranged to have the vehicle picked up, repaired and returned to her home at 8 a.m. the following day.

The next morning, Mr. Bray called to tell Miss Cooper that her car was ready and that he would return it to her home. A few minutes later, Mr. Bray drove into Miss Cooper's driveway and told her "to get in there, I'm going to drive myself back to the station." Miss Cooper entered the passenger's side and Mr. Bray drove toward the station.

Although the above facts were uncontested, the testimony at trial was in conflict as to the events immediately preceding the accident. Miss

Cooper testified that Mr. Bray drove the short distance between her home and the service station at a relatively fast speed (30 to 35 miles an hour), that he failed either to slow down or stop at a stop sign at the last intersection before the service station and that he made a left turn in front of on-coming traffic while the car was still traveling at more than 30 miles an hour. Miss Cooper also testified that as Bray was making the left turn into the service station she suddenly saw a car approaching rapidly from her right and shouted, "Oh, look out, a car is coming." The warning came too late, however, to avert the ultimate collision.

Mr. Bray's recollection of the events differed significantly from Miss Cooper's. He testified that he made a full stop at the last intersection's stop sign, drove slowly up the street adjacent to the service station, activated his left turn signal and then, observing no on-coming cars, commenced a left-hand turn into the service station. He stated that he then heard Miss Cooper's sudden scream and saw a Chevrolet station wagon approaching very rapidly. The station wagon collided with the right front passenger door approximately one second later, spinning the Cooper vehicle around and causing it to collide with another customer's car in the service station.

Ruth Tashma, the driver of the Chevrolet station wagon, also testified at trial. Mrs. Tashma stated that she was driving approximately 35 miles per hour, and that, although it was a clear day, she did not see the Cooper vehicle until it was but a few feet from her car. She stated that the Cooper car turned left, at an excessive rate of speed, directly in front of her car, and that she did not have time either to brake or to swerve to avoid the accident.

Although the facts leading to the accident were in dispute, the unfortunate consequences of the collision were all too clear. As a result of the impact of the collision, Miss Cooper was propelled through the windshield of her automobile and suffered lacerations and bleeding from her eyes and from the rest of her face. She also sustained an inguinal hernia, fractures of her right wrist and ribs, extensive lacerations and injury to her right shoulder and a number of post-traumatic neurological disorders.

In January 1972, Miss Cooper commenced the instant action against Bray, Colonial Oil (Bray's employer), and Mrs. Tashma. Prior to the commencement of trial, our court rendered our initial decision in

*Schwalbe* v. *Jones, supra,* holding unconstitutional Vehicle Code section 17158 insofar as that section barred owner-passengers from recovering for injuries negligently inflicted by drivers of their own vehicles. On the basis of *Schwalbe,* the trial court indicated that it would submit the entire case to the jury under ordinary negligence principles.

During the pendency of the trial, however, our court granted a rehearing in *Schwalbe,* and counsel for Bray and Colonial Oil then objected to having the jury instructed under ordinary negligence principles, arguing that under section 17158 these defendants could only be held liable if the jury found that the accident resulted from Bray's intoxication or willful misconduct. The trial court nonetheless instructed the jury that liability of all defendants could be posited on ordinary negligence principles, apparently taking the position that, as the original *Schwalbe* opinion had held, section 17158 was indeed unconstitutional as applied to owner-passengers. In addition, over defendants' objections, the trial court refused to give any comparative or contributory negligence instructions, concluding that there was insufficient evidence of Miss Cooper's negligence to warrant such instructions.

After deliberation, the jury, by a nine-to-three vote, returned a verdict finding Bray and Colonial Oil liable for Miss Cooper's injuries, but absolving Mrs. Tashma of any responsibility for the accident. The trial court entered judgment in accordance with the jury verdict.

Defendants Bray and Colonial Oil now appeal from the judgment entered against them, contending principally that, in light of this court's intervening decision on rehearing in *Schwalbe* v. *Jones, supra,* 16 Cal.3d 514, the trial court erred in permitting the jury to find them liable under ordinary negligence principles. Plaintiff Cooper, in turn, appeals from the judgment in favor of Mrs. Tashma, claiming that under the evidence presented at trial, Mrs. Tashma's liability was established as a matter of law. We turn first to the appeal of defendants Bray and Colonial Oil.

2. ■ *The disparate treatment accorded owner-passengers by section 17158 bears no rational relation to a realistically conceivable legislative purpose and thus the section violates the equal protection clauses of the California and United States Constitutions.*

The merits of defendants' appeal turn principally upon the constitutionality of Vehicle Code section 17158 which bars an automobile

"owner-passenger," injured in an accident, from maintaining a cause of action against a permissive driver of his or her vehicle, unless the injuries result from the intoxication or willful misconduct of the driver.[1] Despite the provisions of the statute, the trial court instructed the jury that the plaintiff owner-passenger in this case could recover damages from the permissive driver (Bray) and his employer under traditional negligence principles. If section 17158's owner-passenger provision is constitutional, the trial court's instructions were clearly erroneous and prejudicial, and a reversal of the judgment would be required.[2] If, on the other hand, the statutory provision is unconstitutional, the trial court did not err in instructing the jury on this issue.

As already noted, the question of the constitutionality of section 17158's owner-passenger provision was most recently before our court in *Schwalbe* v. *Jones, supra,* 16 Cal.3d 514. In *Schwalbe,* both the majority and dissenting opinions agreed that in assessing the validity of the classifications drawn by section 17158 under equal protection principles, the applicable equal protection standard of review is the so-called "traditional" or "restrained" standard of review, under which the judiciary affords challenged legislation a presumption of constitutionality.

Subsequent to *Schwalbe,* in *Newland* v. *Board of Governors* (1977) 19 Cal.3d 705 [139 Cal.Rptr. 620, 566 P.2d 254], our court had occasion to discuss the judicial task involved in applying the "restrained" equal protection standard of review. In *Newland* we explained that "[t]he decisions clearly hold that a legislative classification, such as that involved here, violates the constitutional requirement of equal protection of the law unless it rationally relates to a legitimate state purpose. Neither our cases nor those of the United States Supreme Court have settled on a particular verbal formula to express this proposition. Some decisions require that the classification ' "bear some rational relationship to a

---

[1]Section 17158 presently provides in full: "No person riding in or occupying a vehicle owned by him and driven by another person with his permission has any right of action for civil damages against the driver of the vehicle or against any other person legally liable for the conduct of the driver on account of personal injury to or the death of the owner during the ride, unless the plaintiff in any such action establishes that the injury or death proximately resulted from the intoxication or willful misconduct of the driver."

[2]Plaintiff argues that, from the evidence presented at trial, the jury could have concluded that she had not given Bray "permission" to drive her car, but instead that Bray had taken on the driving duties on his own initiative; accordingly, she contends that even if section 17158 is constitutional, defendants are not necessarily entitled to rely on the provision. Even assuming that the jury could find from the evidence presented at trial that Bray was not driving with plaintiff's permission, reversal would nonetheless be required because the issue of permission was never presented to the jury.

conceivable legitimate state purpose" ' [citation]; others, that the classification must rest upon 'some ground of difference having a fair and substantial relation to the object of the legislation' [citations]." (19 Cal.3d at p. 711.)

In *Newland* we refrained from selecting one " 'correct' constitutional standard" from among the various alternative linguistic formulations, concluding simply that "[a]ll of the formulas require the court to conduct '*a serious and genuine judicial inquiry* into the correspondence between the classification and the legislative goals.' " (Italics added.) (*Id.*)

Section 17158 divides injured automobile passengers into two classes, passengers who own the vehicle in which they are injured and passengers who do not own the vehicle, and deprives those injured persons who fall into the owner-passenger category of the traditional legal right to sue the driver of the vehicle for negligently inflicted damages, preserving an owner-passenger's recovery only in situations in which his injuries proximately result from the driver's intoxication or willful misconduct. Under *Newland,* our task in the instant case is "to conduct a serious and genuine judicial inquiry" to determine whether this disparate treatment of owner-passengers bears a rational relationship to a realistically conceivable purpose or goal of the legislation.

Although section 17158 contains no explicit statement of legislative intent, a review of the origin and legislative history of the provision provides rather clear insight into the purpose of the enactment and demonstrates that the provision was not intended to impose special burdens on owner-passengers but rather proposed to place such owner-passengers on an equal plane with most other injured automobile passengers.

As explained in the dissenting opinion in *Schwalbe,* the statutory owner-passenger provision at issue here was initially enacted in 1961 "as an explicit amendment to the then existing automobile guest statute.[3]

---

[3]"Vehicle Code section 17158, as amended in 1961, read in full: '*No person riding in or occupying a vehicle owned by him and driven by another person with his permission and* no person who as a guest accepts a ride in any vehicle upon a highway without giving compensation for such ride, nor any other person, has any right of action for civil damages against the driver of the vehicle or against any other person legally liable for the conduct of the driver on account of personal injury to or the death of the *owner or* guest during the ride, unless the plaintiff in any such action establishes that the injury or death proximately resulted from the intoxication or willful misconduct of the driver.' The

(Stats. 1961, ch. 1600, § 1, p. 3429.) A few years prior to the 1961 enactment, the question of whether an 'owner-passenger' was a 'guest' within the meaning of the automobile guest statute, and hence precluded from· recovering for injuries caused by the negligence of the automobile driver, had arisen in California for the first time; under the original guest statute, a 'guest' was defined as a passenger who had not given 'compensation' for the ride.

"In *Ray* v. *Hanisch* (1957) 147 Cal.App.2d 742, 747-751 [306 P.2d 30], the Court of Appeal held that although 'the mere fact plaintiff was riding in her own car while it was driven by defendant, her friend, does not classify her as a guest,' the social arrangement between the parties in that case demonstrated, as a matter of law, that the owner had not given 'compensation' for the ride; consequently, the court held that the owner-passenger was a 'guest' and could not recover. In *Ahlgren* v. *Ahlgren* (1960) 185 Cal.App.2d 216 [8 Cal.Rptr. 218], however, on facts closely analogous to the *Ray* case, the Court of Appeal concluded that an injured owner-passenger was *not* a 'guest' under the guest statute, apparently reasoning that in permitting the driver to use his car, the owner had given 'compensation' within the meaning of the act. (See also *Ahlgren* v. *Ahlgren* (1957) 152 Cal.App.2d 723, 725 [313 P.2d 88].)

"The confusion illustrated by the *Ray* and *Ahlgren* cases was not unique to the California scene. Courts in other states had reached varying conclusions on this very issue (see Annot. (1959) 65 A.L.R.2d 312; Note (1957) 4 U.C.L.A.L.Rev. 652; Note (1958) 32 So.Cal.L.Rev. 93) and Dean Prosser had pointedly observed that among the guest statute's 'knotty little problems involving petty and otherwise entirely inconsequential points of law' was the question: 'Can the owner of the car be a guest in it when someone else is driving?' (Prosser, The Law of Torts (4th ed. 1971) § 34, p. 187.)

"To eliminate this confusion, the Legislature in 1961 enacted the provision at issue in this case, establishing that a passenger-owner was to be treated in a similar manner as an automobile 'guest,' whether or not the owner's conduct could be construed as providing 'compensation' for the ride. (See *Review of Selected 1960-1961 California Legislation* (1971) 36 State Bar J. 858.)

emphasized language was added by the 1961 amendment." (Fn. from dis. opn.; renumbered.)

"The 1961 'owner-passenger' amendment to the automobile guest statute came before this court for the first time in *Patton* v. *La Bree* (1963) 60 Cal.2d 606 [35 Cal.Rptr. 622, 387 P.2d 398]. In *Patton* the plaintiff, a car owner who had taken her car to an automobile dealer to be serviced, was injured while riding as a passenger; the accident occurred while one of the car dealer's employees was driving. Plaintiff claimed initially that because she had paid for the servicing of her car she had given 'compensation' for the ride; she then argued that insofar as the amended guest statute distinguished between nonowner-passengers who had given compensation and owner-passengers who had given compensation, allowing recovery by the former but barring recovery by the latter, the statute's classification scheme was invalid under the equal protection clause.

"Our court rejected that equal protection claim, but [contrary to defendants' contention and to the suggestion of the majority opinion in *Schwalbe* (16 Cal.3d at pp. 519-520)] the *Patton* holding in no sense controls the instant case. As explained above, the statute before the court in *Patton* accorded all injured owner-passengers the same treatment as most injured social passengers. While the Legislature had concluded that the giving of compensation represented a real distinction in the 'guest' context, and justified differential treatment between those passengers who had paid for the ride and those who had not, the Legislature had apparently concluded that in the context of an 'owner-passenger' the concept of giving 'compensation' had little meaning; as noted earlier, in some sense every owner-passenger provides some 'compensation' (e.g., the rental value of the car) for the ride. (See, e.g., *Lorch* v. *Eglin* (1952) 369 Pa. 314 [84 A.2d 841, 843]; *Parker* v. *Leavitt* (1960) 201 Va. 919 [114 S.E.2d 732, 737].) Thus, rather than having the application of the guest statute turn on the spurious notion of 'compensation' when an owner-passenger was involved, the Legislature provided that all owner-passengers were to be accorded the same treatment as the majority of social guests. Our holding in *Patton* did no more than uphold such a legislative decision as reasonable.

"[T]he constitutional issue before our court in the instant case is totally different from the question presented in *Patton*. At the time *Patton* was decided, the statutory provision denying an owner-passenger recovery for a driver's negligence simply operated to place injured owner-passengers on a par with most injured social guests; in the instant case by contrast, the challenged provision inflicts a burden on injured owner-passengers

borne by *no other class* of automobile accident victims. The difference in circumstances, of course, is attributable to this court's intervening decision in *Brown* v. *Merlo* [(1973)] 8 Cal.3d 855 [106 Cal.Rptr. 388, 506 P.2d 212, 66 A.L.R.3d 505], in which we held that in denying recovery to nonpaying 'guests' the basic statute violated the equal protection of the laws.

"In light of the demise of the automobile guest statute in *Brown* v. *Merlo,* it is clear that the disparate treatment accorded owner-passengers by the challenged provision bears no rational relation to the original legislative purpose. As we have seen, the provision at issue was enacted in order to treat owner-passengers as 'guests' under the guest statute; now that automobile guests are no longer denied recovery for injuries suffered at the hands of a negligent driver, the instant classification clearly does not further the legislative purpose of according owner-passengers the same treatment as such guests, but rather defeats that purpose by singling out owner-passengers for differential treatment from all other automobile accident victims." (16 Cal.3d at pp. 530-532.)

Defendants, recognizing that this court's decision in *Brown* v. *Merlo, supra,* undermines the rationality of the owner-passenger portion of section 17158, urge our court to reconsider and reverse the decision in *Brown* v. *Merlo,* and then to uphold the validity of the challenged owner-passenger provision on the authority of *Patton.* As defendants acknowledge, however, in 1973 the Legislature repealed the guest-passenger portion of section 17158 and thus any attempt to turn the clock back to pre-*Brown* v. *Merlo* law is clearly futile. After *Brown* v. *Merlo* and the 1973 amendment of section 17158, the owner-passenger provision can survive only if there is a realistically conceivable legislative purpose which rationally justifies the disparate treatment *presently* accorded owner-passengers and nonowner-passengers.

Defendants suggest initially that such rational justification for the statute's disparate treatment can be found in the Legislature's interest in promoting automobile safety by encouraging the careful selection and supervision of permissive drivers by car owners. Although we have no doubt that these are important and legitimate state interests, for a number of reasons we cannot find either that these concerns are conceivable purposes of the statute in question or that such purposes can rationally justify the treatment accorded by the provision.

To begin with, although defendants suggest that the purpose of section 17158 is to encourage owners to use care in the selection and supervision of those who they permit to drive their cars, the statute itself draws no distinction between those owners who do use care in these activities and those owners who do not use such care, but instead bars *all* owners from recovering without regard to the exercise or nonexercise of care. If the Legislature had intended the statute to encourage diligence in the selection and supervision of permissive drivers, it is hard to believe that it would have drafted the statute so as to bar recovery by *all* owner-passengers, including the most careful owners who selected the most cautious drivers and who scrupulously supervised the driving.

The proposed rationale is made no more plausible by defendants' suggestion that the Legislature may have determined to bar recovery by all owner-passengers, negligent and nonnegligent alike, because of the owner's "legal right" to direct and control the actions of the permissive driver. As explained in the dissenting opinion in *Schwalbe*: "It is common knowledge, of course, that as a result of the speed at which cars now travel and the congestion of streets and freeways, most traffic accidents develop almost instantaneously, leaving any owner-passenger little opportunity to intercede. Moreover, as for those few occasions when he has surrendered the wheel, the owner, to revert to a cliche, is no longer 'in the driver's seat' and physical intercession in all likelihood would increase rather than reduce the probability of mishap. Finally, and most importantly, the likelihood and effectiveness of physical intercession as well as verbal assistance such as the sounding of a warning are, of course, functions of a passenger's presence in the car, not his title to the car." (16 Cal.3d at p. 534.)

Moreover, this suggested legislative purpose cannot be reconciled with the statutory "exceptions" embodied in section 17158, which permit an owner-passenger to obtain recovery when his injury is proximately caused by the driver's *intoxication* or *willful misconduct*. If a purpose of section 17158 was to encourage care in the selection and supervision of drivers, it obviously makes no sense for the statute to permit recovery when an owner permits an intoxicated person to drive the car, or when the owner selects a driver who engages in willful misconduct rather than simple negligence.[4] These statutory exceptions, which parallel identical excep-

---

[4] These statutory exceptions also refute defendants' belated argument that the statutory classification may be justified by a conceivable legislative purpose of discouraging

tions in the original guest statute (see fn. 3, *ante*), make it plain that the purpose of the provision was simply to accord injured owner-passengers equal treatment with social guests, and not to impose special disabilities on such owner-passengers.

Finally, other statutory provisions—located in the same chapter of the Vehicle Code as section 17158—make it clear that, as between a negligent permissive driver and an owner, the general legislative policy in this state is to hold the negligent driver primarily liable for resulting injuries, and not, as defendants' argument suggests, to saddle a nonnegligent owner with the entire loss. "Thus, whereas Vehicle Code section 17150 povides that an automobile owner is liable for injuries to third parties resulting from a permissive driver's negligent operation of the owner's vehicle, section 17152 explicitly declares that it is the negligent operator or driver who is primarily liable and 'recourse shall first be had against the property of the operator'; moreover, section 17153 specifically provides that '[i]f there is recovery . . . under this chapter against an owner . . . , the owner . . . is subrogated to all the rights of the person injured . . . and may recover from the operator the total amount of any judgment and costs. . . .[5]" (*Schwalbe* v. *Jones, supra,* 16 Cal.3d at pp. 535-536 (dis. opn.).) In light of these provisions, it is patently unrealistic to assert that in enacting section 17158 the Legislature intended in effect to "impute" or "attribute" the driver's negligence to the owner, without regard to the owner's exercise of due care, so as to bar any recovery by the owner against the negligent driver.

---

automobile owners from ever allowing a permissive driver to drive the vehicle when the owner is present, ostensibly because of the permissive driver's limited familiarity with the vehicle. If this were indeed the legislative purpose, it is impossible to believe that the Legislature would have created the present exceptions, for such exceptions have the effect of removing the statutory "disincentive" with respect to those permissive drivers who pose the greatest safety hazard.

[5]"Section 17152 provides in full: 'In any action against an owner, or personal representative of a decedent on account of liability imposed by Sections 17150, 17154, or 17159 for the negligent or wrongful act or omission of the operator of a vehicle, the operator shall be made a party defendant if service of process can be made in a manner sufficient to secure personal jurisdiction over the operator. Upon recovery of judgment, recourse shall first be had against the property of the operator so served.' "

"Section 17153 provides in full: 'If there is recovery under this chapter against an owner, bailee of an owner, or personal representative of a decedent, the owner, bailee of an owner, or personal representative of a decedent is subrogated to all the rights of the person injured or whose property has been injured and may recover from the operator the total amount of any judgment and costs recovered against the owner, bailee of an owner, or personal representative of a decedent.' " (Fn. from dis. opn.; renumbered.)

Thus, for all of the above reasons, the statutory classification at issue cannot be justified as a means of encouraging care in the selection or supervision of permissive drivers.

Defendants, relying primarily on the majority opinion in *Schwalbe,* suggest alternatively that even if our court cannot realistically find that the statute's disparate treatment of owner-passengers was intended to promote care by such owners, we should nonetheless sustain the statutory classification as rationally related to an ostensible legislative purpose of "protecting" negligent permissive drivers from liability to owner-passengers. It is true, of course, that section 17158 does have the effect of "protecting" or "insulating" negligent drivers (and their insurers) from lawsuits by injured owner-passengers. This rendition of a suggested legislative purpose, however, does no more than restate the terms of the statute itself and neither indicates the general goal which the Legislature ostensibly intended to promote in providing such "protection" at owner-passengers' expense, nor does it demonstrate that such a purpose can realistically be ascribed to the Legislature.

It is the basic policy in this state, of course, that every person is responsible for the consequences of his negligent acts (Civ. Code, § 1714) and, as we have already noted, numerous Vehicle Code sections explicitly provide that permissive drivers bear the primary responsibility for injuries which are proximately caused by their negligent driving. (Veh. Code, §§ 17152, 17153.) In light of these general provisions, we find it difficult to attribute to the Legislature a conscious intent to protect negligent drivers from liability for injuries which they inflict upon owner-passengers.

Although there is nothing in the legislative history of section 17158 to support the thesis, defendants—adverting to the majority opinion in *Schwalbe*—contend that the Legislature may have purposefully intended to protect the permissive driver from suit by an owner-passenger in view of the fact that, under Insurance Code section 11580.1,[6] the *owner-passenger's* insurance policy might not afford coverage for injuries to the owner. As pointed out in the dissenting opinion in *Schwalbe,* however, "California statutory law explicitly provides that all automobile *drivers* as well as automobile *owners,* are required to obtain adequate insurance

---

[6]Section 11580.1 subdivision (c), provides that an automobile liability insurance policy may by appropriate provision exclude coverage for "(5) Liability for bodily injury to an insured."

coverage. (See Veh. Code, § 16020.)[7] In light of the longstanding California policy of seeking to encourage automobile drivers to carry liability insurance (see Note, *Financial Responsibility Laws in Constitutional Perspective* (1973) 61 Cal.L.Rev. 1072, 1076-1078), it cannot realistically or plausibly be maintained that the Legislature enacted or reenacted section 17158 to protect those drivers who choose *not* to obtain their own insurance, and, in particular, to afford that protection at the expense of the very victims whom such uninsured drivers negligently injure." (16 Cal.3d at p. 537.) As the facts of this case vividly demonstrate, in most situations section 17158 operates simply to relieve *the driver's insurer* of liability for a type of risk which such insurer clearly agreed to assume.

In sum, having conducted a "serious and genuine judicial inquiry into the correspondence between the [statutory] classification and the legislative goals" (*Newland* v. *Board of Governors, supra,* 19 Cal.3d 705, 711), we are convinced that the disparate treatment accorded by the statute is not rationally related to a realistically conceivable legislative purpose. "Enacted to provide injured owner-passengers with the same treatment accorded injured social guests, the statute now operates to deny owner-passengers the legal rights enjoyed by every other class of automobile accident victims." (*Schwalbe* v. *Jones, supra,* 16 Cal.3d at p. 537 (dis. opn.).) Accordingly, we conclude that the statutory classification violates the state and federal equal protection guarantees. *Schwalbe* v. *Jones, supra,* 16 Cal.3d 514 is hereby overruled.

As noted, the trial court in this case proceeded upon the assumption that section 17158 was unconstitutional and refused to instruct the jury on the basis of the statute but instead instructed the jury that plaintiff could prevail against Bray and Colonial Oil under normal negligence principles. ██ In view of our conclusion that section 17158 is indeed unconstitutional, the trial court did not err in this regard and consequently the judgment in favor of plaintiff and against Bray and Colonial Oil should be affirmed.[8]

---

[7]"Section 16020 provides in full: '*Every driver of,* and owner of, a motor vehicle shall, at all times, maintain in force one of the forms of financial responsibility specified in Section 16021.' (Italics added.)" (Fn. from dis. opn.; renumbered.)

[8]In addition to challenging the trial court's ruling on section 17158, defendants Bray and Colonial Oil contend that the trial court erred in refusing to instruct the jury on the comparative negligence doctrine. The trial court concluded that there was insufficient evidence of plaintiff's negligence to warrant submitting the issue to the jury, and although defendant attacks that determination, we agree with the trial court's ruling. As the facts

3. *Plaintiff's appeal from the judgment in favor of Mrs. Tashma is without merit.*

■ As discussed at the outset of this opinion, at trial the jury absolved Mrs. Tashma, the driver of the other vehicle involved in the collision, of any liability for the accident. Plaintiff appeals from the judgment entered in Mrs. Tashma's favor, contending that the evidence establishes Mrs. Tashma's liability as a matter of law. Plaintiff's own testimony at trial, however, indicated that Bray turned directly into the path of Mrs. Tashma's on-coming automobile without warning and the jury could certainly have concluded, on the basis of such testimony, either that Mrs. Tashma was not negligent or that her negligence was not a proximate cause of the injury. Since there was thus substantial evidence to support the jury finding, plaintiff's present appeal must fail. (See, e.g., *Foreman & Clark* v. *Fallon* (1971) 3 Cal.3d 875, 881 [92 Cal.Rptr. 162, 479 P.2d 362].)

The judgment is affirmed. With respect to the appeal of defendants Bray and Colonial Oil, plaintiff shall recover her costs on appeal from those defendants. With respect to the appeal of plaintiff, defendant Tashma shall recover her costs on appeal from plaintiff.

Bird, C. J., Mosk, J., Manuel, J., and Newman, J., concurred.

**RICHARDSON, J.**—I respectfully dissent. Only two years ago, a substantial majority of the justices of this court upheld the constitutionality of section 17158 of the Vehicle Code to the extent that it precluded recovery by an owner-passenger against the driver on account of personal injuries to, or death of, the owner proximately resulting from the negligence of the driver. (*Schwalbe* v. *Jones* (1976) 16 Cal.3d 514 [128 Cal.Rptr. 321, 546 P.2d 1033].)

No new legal developments have occurred which would alter, or challenge, our *Schwalbe* analysis. Nevertheless, the present majority readily adopts the dissenting opinion in *Schwalbe*, without any substantial additional discussion. The issues and the arguments remain identical. Only the faces have changed.

---

related above demonstrate, it was undisputed that plaintiff shouted to the driver as soon as she was aware of any danger. Although defendant contends that the jury might have found plaintiff negligent in either permitting Bray to drive her car or in failing to instruct him to slow down earlier in the brief trip, we believe the trial court properly determined that on the facts presented the jury would not have been warranted in finding that plaintiff had failed to exercise due care under the circumstances.

The majority concludes that section 17158 lacks *any rational justification,* a conclusion directly contrary to our holding in *Schwalbe.* As we carefully explained (*Schwalbe, supra,* pp. 521-522), California courts had upheld the validity of liability insurance policies which excluded from coverage the insured or members of his family. Legislation permitted such exclusion as well as uninsured motorist recovery under the terms of the owner's policy. When in 1973 the Legislature considered the reenactment of the owner portion of former section 17158 "it did so in the context of its own prior enactments, whose practical effect was to preclude the owner from any recourse to his own policy." (P. 522.) The Legislature rationally might have concluded that, to use Justice Sullivan's language, it "was simply not fair" (*ibid.*) to allow the owner-passenger to sue his own driver, a person whom he selected, and over whom he retained some power of supervision and control and to "seek his recovery from the insurance or personal assets of the driver." (*Ibid.*) Indeed, imposition of such liability reasonably may have been deemed a trap for a particular class of persons—uninsured, nonowner drivers. Surely there are many persons who are able to drive, but who do not own a vehicle and accordingly are uninsured. Such persons may consent to drive an owner-passenger to his destination only because they assume that the owner possesses liability coverage which extends to permissive users. Thus, in the absence of a provision such as section 17158, the uninsured driver would face *unlimited personal liability* when his negligence results in injury or death to the owner-passenger.

Although the present majority does not find it plausible that section 17158 was enacted to protect uninsured motorists, I think it very probable that the Legislature weighed the conflicting interests of driver and owner and concluded that the driver should be protected, given the owner's selection of, and supervision over, the driver. While it may disagree with the legislative reasoning as a matter of policy, surely the majority cannot characterize the legislative conclusion as irrational or inconceivable.

The issues in the matter before us were stated with characteristic succinctness by Justice Sullivan in *Schwalbe*: "Plaintiffs, in order to sustain their position that section 17158 denies them equal protection of the laws, must not be content to argue that the above reasoning was unwise, or that the purpose of the Legislature could have been better furthered by another means. Nor is it enough for them to show that the lawmakers, in addressing similar problems in similar areas, have made dissimilar judgments. The burden cast upon them is that of demonstrat-

ing that the means chosen by the Legislature were irrational, or that the purpose which they furthered was not a legitimate legislative concern. This they have not done. As the foregoing analysis indicates, the Legislature, pursuing the clearly legitimate goal of achieving a fair distribution of liability for damage caused by unreasonable conduct, concluded that the owner of a motor vehicle, whether he drives it himself or selects another to act as his chauffeur, should not recover for injuries sustained by him due to the negligent operation of that vehicle—especially in light of the fact that in the case of the surrogate driver any such recovery would be at the expense of that driver. We may disagree with this conclusion, but we cannot brand it as beyond the pale of reason. To do so would be to seriously erode our constitutional function. We conclude therefore that the motion for nonsuit on the negligence count was properly granted." (*Schwalbe* v. *Jones, supra,* 16 Cal.3d at pp. 522-523, fns. omitted.)

Just two years ago, five justices of this court concluded that the foregoing analysis disclosed a rational basis supporting the challenged provision. The fact that the present majority holds to the contrary emphasizes only that reasonable minds may differ on the matter. In such a case we have said consistently that we must resolve any doubts in favor of the constitutionality of the challenged legislation. (E.g., *In re Ricky H.* (1970) 2 Cal.3d 513, 519 [86 Cal.Rptr. 76, 468 P.2d 204]; *In re Dennis M.* (1969) 70 Cal.2d 444, 453 [75 Cal.Rptr. 1, 450 P.2d 296]; *State of California* v. *Ind. Acc. Com.* (1957) 48 Cal.2d 365, 371 [310 P.2d 7].)

I would reverse the judgment in favor of plaintiff and against defendants Bray and Colonial Oil.

Clark, J., concurred.