[Civ. No. 24952. Fourth Dist., Div. One. Jan. 4, 1983.]

SEGUROS LA PROVINCIAL, S.A., Plaintiff and Respondent, v.
FREMONT INDEMNITY COMPANY, Defendant and Appellant.

COUNSEL

Revere & Wallace, Frank Revere and Catherine M. Adams for Defendant and Appellant.

Higgs, Fletcher & Mack, Gregg C. Sindici and Dennis J. Stewart for Plaintiff and Respondent.

OPINION

**WORK, J.**—Fremont Indemnity Company (Fremont) appeals a summary judgment declaring the insurance policy issued by Seguros La Provincial, S.A. (Seguros), a Mexican insurance company, through a surplus line broker in California, provides no bodily injury coverage for any occupant of the insured

vehicle and declaring Seguros had no duty to defend any claim of loss instituted by the occupants. Fremont contends Insurance Code section 11580.1, subdivision (g)[1] permitting the issuance of the insurance policy by Seguros violates California public policy and denies equal protection of the laws under both the federal and state Constitutions. For the reasons following, we conclude both contentions are meritless.

*Factual and Procedural Background*

Seguros is a Mexican corporation selling Mexican automobile insurance on risks arising only within the territorial limits of the Republic of Mexico. On November 7, 1978, in Calexico, California, Seguros issued a Mexican automobile policy to Bruce Elbert Schmidt insuring his 1977 Ford van. During the policy term, the insured vehicle was involved in an accident in Baja California, Republic of Mexico. At the time of the accident, the vehicle was being driven by David Spangler and carrying nine passengers.

After the occupants filed suit for their injuries, Seguros filed for declaratory relief and interpleaded in the occupants' lawsuit, alleging Fremont had issued a policy of insurance covering the insured vehicle which was in effect at the time of the accident. Fremont claims Seguros' policy affords primary coverage for liability arising from the accident leaving Fremont liable only for the excess. Seguros' policy contains the following exclusion: "1. —Exceptions. In no event shall this insurance cover:

". . . . . . . . . . . . . . . . . . . . . . . . . . . .

"VII. —Civil liability because of death of or bodily injury to the driver of the described vehicle or any other occupant, except for medical expenses, if any, covered under Section 5 of the Specification of Risk; . . . ." This exclusion is specifically permitted by section 11580.1, subdivision (g) and the medical benefits had already been tendered to the court in the interpleader.

### SECTION 11580.1, SUBDIVISION (g)[2] DOES NOT VIOLATE THE PUBLIC POLICY OF THE STATE OF CALIFORNIA

Fremont relies on *Brown* v. *Merlo* (1973) 8 Cal.3d 855 [106 Cal.Rptr. 388, 506 P.2d 212, 66 A.L.R.3d 505], and *Contreras* v. *America, Compania General De Seguros, S.A.* (1975) 48 Cal.App.3d 270 [121 Cal.Rptr. 694].

---

[1]All statutory references are to the Insurance Code unless otherwise specified.

[2]Section 11580.1, subdivision (g) provides: "Notwithstanding the provisions of paragraph (4) of subdivision (b) of this section, or the provisions of Article 2 (commencing with Section 16450) of Chapter 3 of Division 7 of, or Article 2 (commencing with Section 17150) of Chapter 1 of Division 9 of, the Vehicle Code, a Mexican nonadmitted insurer and any named insured may, by the terms of any policy of automobile insurance for use solely in the Republic of Mex-

Section 11580.1, subdivision (g) allows a Mexican insurer and an insured in an automobile insurance policy covering use solely in Mexico to agree to an exclusion from liability for injuries occurring to an occupant. The provision is permissive in character, as it neither strips an injured occupant of his or her right of action against the driver nor mandates incorporation of the exclusion within a policy. Consequently, Fremont's reliance on *Brown* v. *Merlo, supra,* 8 Cal.3d 855, is misplaced. There, the Supreme Court declared the automobile guest statute (former Veh. Code, § 17158) was unconstitutional. Unlike section 11580.1, subdivision (g), the invalidated guest statute deprived an injured guest of redress from his host for ordinary negligence.

Fremont's reliance on *Contreras* v. *America, Compania General De Seguros, S.A., supra,* 48 Cal.App.3d 270, is similarly misplaced. In *Contreras,* the court held the minimum requirements of *former* section 11580.1 applied equally to all policies delivered or issued in California, regardless of whether the policy was executed by a Mexican nonadmitted insurer covering only those risks incurred within the Republic of Mexico. However, the Legislature during the following year amended sections 11580, 11580.5, 11580.1 and 11580.2 (Stats. 1976, ch. 1145, pp. 5185-5196), specifically to avoid such a result in future cases. As amended, section 11580.05 provides in part: "The Legislature declares that the public policy of this state in regard to provisions authorized or required to be included in policies of automobile liability insurance or motor vehicle liability insurance issued or delivered in this state shall be as stated in this article, *that this article expresses the total public policy of this state respecting the content of such policies and that no provision of this article or of the Vehicle Code shall apply to policies affording automobile liability insurance or motor vehicle liability insurance in the Republic of Mexico issued or delivered in this state by a nonadmitted Mexican insurer . . . .* Except as provided above, any other policy issued or delivered in this state affording liability insurance with respect to ownership, maintenance, or use of a motor vehicle shall comply with requirements set forth in Section 11580, 11580.1 and 11580.2" (Italics added.) Moreover, the uncodified section 5 of the act clearly articulated the legislative intent underlying the enactment as follows: "Sections 1 to 4, inclusive, of this act are enacted in response to the court case of *Contreras* v. *America, Compania General de Seguros, S.A.,* 48 Cal.App.3d 270, and it is the intent of the Legislature in enacting this act to reverse the effect of the *Contreras* case, and to provide that certain provisions of any policy which provides insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle in the Republic of Mexico issued by a Mexi-

---

ico to which subdivision (a) applied, or by a separate writing relating thereto, agreed to the limitation that coverage under such policy shall not apply to any person riding in or occupying a vehicle owned by the insured or driven by another person with the permission of the insured. Such agreement shall be binding upon every insured to whom any such policy applies and upon any third party claimant."

can insurance company shall not be subject to the effect of the *Contreras* case." (Stats. (1975-1976 Reg. Sess.) ch. 1145, § 5, p. 5196.)

■ Thus, section 11580.1, subdivision (g) expressly states the public policy of this state, as the differentiated treatment is expressly sanctioned by statute and cannot be challenged on public policy grounds. (Compare *Farmers Ins. Exchange* v. *Cocking* (1981) 29 Cal.3d 383, 387 [173 Cal.Rptr. 846, 628 P.2d 1].) "[T]he public policy of this state is contained not in broadly expressed generalized abstractions but in [the cited] applicable statutory provisions themselves." (*Id.,* at p. 388.) Consequently, the section in controversy "is not only consistent with state public policy, *it itself constitutes and expresses that policy.*" (*Ibid.*)[3]

### SECTION 11580.1, SUBDIVISION (g) DOES NOT VIOLATE EQUAL PROTECTION GUARANTEES

■ Fremont contends there is no rational basis to discriminate among either insurers (Mexican nonadmitted and domestic admitted insurers) or insureds merely because of where the loss is incurred. Seguros responds, alternatively: (1) there is no state action upon which to invoke equal protection principles or, (2) section 11580.1, subdivision (g) is supported by adequate rational bases. Because the latter assertion is correct, we do not reach the state action issue.

In reviewing Fremont's constitutional challenge, we apply "the so-called 'traditional' or 'restrained' standard which requires courts to uphold the validity of the legislative classification if it rationally relates to a legitimate state purpose." (*Farmers Ins. Exchange* v. *Cocking, supra,* 29 Cal.3d 383, 389; *Cooper* v. *Bray* (1978) 21 Cal.3d 841, 847 [148 Cal.Rptr. 148, 582 P.2d 604]; *Newland* v. *Board of Governors* (1977) 19 Cal.3d 705, 711 [139 Cal.Rptr. 620].) Although the challenged legislation is presumed constitutional (*D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1, 16 [112 Cal.Rptr. 786, 520 P.2d 10]), we must conduct a " 'serious and genuine judicial inquiry' into the nature of the connection between the particular classification and the legislative goals." (*Farmers Ins. Exchange* v. *Cocking, supra,* 29 Cal.3d at p. 389; *Cooper* v. *Bray, supra,* 21 Cal.3d at 848; *Newland* v. *Board of Governors, supra,* 19 Cal.3d at p. 711.)

Fremont argues section 11580.1, subdivision (g) irrationally discriminates against three distinct classes: (1) Mexican nonadmitted and domestic insurers, (2) California citizens, who allegedly can purchase insurance for travel in Mex-

---

[3]Relying on the public policy consideration of promoting the financial protection of California residents while passengers of vehicles being operated *in* California, Fremont sets forth a non sequitur in arguing the section in dispute "clearly attempts to rob California residents of this protection while passengers in vehicles being operated *in* Mexico." (Italics added.)

ico from either a nonadmitted Mexican or California insurer, and (3) passengers riding in vehicles operated by drivers with insurance purchased from nonadmitted Mexican insurers, unprotected by the Insurance Code.

The legislation under attack exempts Mexican nonadmitted insurers from the insuring requirements of the Insurance Code *only* when insuring against risks incurred *in* the Republic of Mexico. (See §§ 11580.05 and 11580.1, subd. (g).) Mexican law, however, does not recognize foreign insurance policies as complying with Mexican financial responsibility laws. (See § 11580.6.) Consequently, insurance coverage complying with the Mexican financial responsibility laws is available only from a nonadmitted Mexican company. American and Mexican insurers are not similarly situated when writing liability insurance covering conduct in Mexico, a fact recognized by the challenged statute. For this reason, equal protection analysis is not appropriate. Moreover, regarding the insureds, a driver desiring coverage in Mexico can only comply with Mexican law by choosing Mexican insurance.

Nevertheless, applying the rational basis test, Fremont cannot merely argue the underlying legislative rationale for section 11580.1, subdivision (g) was unwise, or the legislative purpose could have been better furthered by another means, or the Legislature, in addressing similar problems in similar areas, have made dissimilar judgments, but rather must show the legislative choice is irrational, or the purpose promoted is not a legitimate legislative concern. (*Schwalbe* v. *Jones* (1976) 16 Cal.3d 514, 522-523 [128 Cal.Rptr. 321, 546 P.2d 1033], overruled on other grounds in *Cooper* v. *Bray* (1978) 21 Cal.3d 841, 855 [148 Cal.Rptr. 148, 582 P.2d 604].) Fremont does neither.

In reacting to *Contreras,* the Legislature was keenly aware one traveling in Mexico, insured only by an American insurance policy, is not in compliance with Mexico's financial responsibility laws and is subject to arrest and impoundment of his/her vehicle following an accident. (See § 11580.6.) For reasons of convenience and necessity, the Legislature has never required companies selling Mexican liability insurance in this state be "admitted" or licensed, instead deeming them as "nonadmitted" insurers (see §§ 24 and 25), unauthorized to transact the business of insurance within this state. They may, however, market their policies through surplus line brokers, licensed and heavily regulated by the state (see § 1760 et seq.). (Analysis of Assem. Bill No. 3099 (Deddeh; 1975-1976 Reg. Sess.) prepared by the general counsel, Carlyle R. Brakensiek, of the Assem. Com. on Finance, Ins. & Commerce, p. 2, dated Aug. 30, 1976 [Stats. 1976, vol. 4, p. 310.].) Through this marketing system Californians enjoy the convenience of being able to locally purchase liability insurance complying with Mexican financial responsibility laws, affording coverage from the very moment they enter Mexico. Viewed from the perspective of the Mexican insurance companies, the facile solution to the

*Contreras* case was merely to issue their policies only on the Mexican side of the border in order to completely avoid the effect of the *Contreras* holding. The Legislature's express overruling of *Contreras* was an obvious attempt to avoid the inevitable consequences of this potential response and its probable detriment to Californians; for, if Mexican insurance was only available from Mexican brokers in Mexico, Californians would lose the convenience and protections derived from their ability to buy this insurance in California through licensed surplus line brokers, domestic entities directly accountable to state authorities. In busy metropolitan border crossing areas, the inability to obtain protection before crossing the border would daily leave thousands of motorists unprotected for at least some portion of the time they are exposed to accident risk in Mexico. Moreover, it is likely many motorists who now take advantage of the conveniently available insurance protection through local brokerage houses would neglect to obtain coverage after entry into Mexico.

*Disposition*

The judgment is affirmed.

Brown, (Gerald), P. J., and Staniforth, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 2, 1983.