[Civ. No. 28560. Fourth Dist., Div. One. June 4, 1984.]

FAR WEST SERVICES, INC., Plaintiff and Respondent, v.
GENE LIVINGSTON, as Director, etc., Defendant and Appellant.

COUNSEL

John K. Van de Kamp, Attorney General, and Neal J. Gobar, Deputy Attorney General, for Defendant and Appellant.

Gray, Cary, Ames & Frye, Marcelle Mihaila and David L. Osias for Plaintiff and Respondent.

OPINION

**WORK, J.**—Gene Livingston, acting Director of the California Employment Development Department (EDD), appeals a judgment in favor of Far West Services, Inc. (Far West), refunding the latter $66,132.16 in unemployment and disability insurance contributions and interest plus postpayment interest at 12 percent per annum and postjudgment interest at 10 percent per annum. EDD contends the necessary elements within Unemployment Insurance Code section 680[1] to impose unemployment insurance tax liability upon Far West are contained in the form B contracts Far West was

---

[1]All statutory references are to the Unemployment Insurance Code.

required to execute to obtain services of members of a musicians union. EDD further contends the execution of an agreement modifying the form B contracts, without the consent of or notice to the union, did not excuse Far West from statutory tax liability under section 680 and, section 680 is constitutionally valid. For the reasons which follow, we find each of EDD's contentions persuasive and reverse the judgment.

### Factual and Procedural Background

In 1971, the Legislature enacted section 680 (Stats. 1971, ch. 1281, § 1), stating certain persons contracting for the services of musicians are "employers" for unemployment insurance purposes. ■ The undisputed underlying legislative intent of section 680 was to reverse the effect of judicial rulings that musicians who contracted to provide services under the form B union contract were nevertheless independent contractors and not common law employees of the entertainment entity which hired them. (See, e.g., *Mark Hopkins, Inc.* v. *Cal. Emp. etc. Com.* (1948) 86 Cal.App.2d 15, 16-18 [193 P.2d 792]; *Bartels* v. *Birmingham* (1947) 332 U.S. 126 [91 L.Ed. 1947, 67 S.Ct. 1547, 172 A.L.R. 317].)

Between 1970 and 1974, Far West hired both union and nonunion musicians in its restaurants without distinguishing between them regarding work conditions, hours employed, or compensation. Written contracts were entered into between it and the musician, or in the case of a group, its leader. Nonunion musicians signed contracts prepared by Far West. Union musicians, members of the American Federation of Musicians, signed form B contracts stating Far West was the musician's employer and assumed the unemployment insurance tax liability.[2] The form B contract was prepared in quadruplicate and the musicians forwarded a copy to the union. However, Far West required union musicians to sign a side agreement it prepared, in which the musicians agreed they were independent contractors and "the musicians collectively or their leader as employer of such musicians shall . . . pay the . . . taxes . . . connected with the engagement . . . ." The side agreement was prepared in duplicate, signed by the group leader and Far West, each retaining a copy with the intent not to forward a copy to the union.

After pursuing its administrative remedies seeking reassessment of unemployment and disability insurance contributions due, Far West paid them in mid-1979; an administrative law judge denied its petitions for refund.

---

[2]Although a few of the form B contracts did not expressly provide for the employer to assume liability for unemployment insurance contributions, counsel at trial agreed this case was predicated on form B contracts which expressly contained language requiring Far West to pay unemployment insurance taxes.

The California Unemployment Insurance Appeals Board affirmed the decision of the administrative law judge and Far West sued to recover the collected employer contributions to the unemployment compensation fund and for attorney fees, claiming the contributions were illegally collected because it was not an "employer." Specifically, it claims it did not "execute a written agreement with a union representing musicians" and the modified agreement does not provide "that such person is the employer of such musicians and assumes liability to provide for and pay unemployment insurance taxes upon their wages" as required by section 680; section 680 denies it equal protection guaranteed by the United States and California Constitutions; and a determination Far West executed a written agreement with the union representing musicians pursuant to California law is impermissible as being preempted by the National Labor Relations Act (NLRA) and contrary to its public policies.

The trial court found the side agreement shows Far West did not intend to enter into any agreement with the musician's union in terms of the form B contract; a musician is not deprived of his contractual rights merely because he is a member of a labor organization, although he may well be subject to union discipline if he violates the membership terms; and the parties did not intend to limit their contractual obligations and rights to the form B contract without modification. ▮▮▮▮ The trial court did not address the constitutional and NLRA contentions.[3]

### Far West Is an Employer
### Within the Meaning of Section 680

▮ EDD contends the trial court erred in concluding no form B contract was entered into within the meaning of section 680, and that in fact the parties intended to enter into two contractual relationships—a form B contract to which the union was a necessary party, and a separate modification agreement solely between Far West and the band leader. EDD contends the former was valid and binding and enforceable among the three interested parties, imposing a statutory tax obligation under section 680 upon Far West. EDD concedes the modification agreement also may be binding between Far West and the band leader, but stresses, however, the undisclosed, two-party modification does not interfere with the statutory policy of placing a primary tax obligation on the business contracting with the musicians in order to guarantee the state is not deprived of its tax receipts to fund mu-

---

[3]Since the issues here involve the application of taxing statutes to material facts not in substantial dispute, we are confronted purely with questions of law and are not bound by the findings of the trial court. (*Anaconda Co.* v. *Franchise Tax Board* (1982) 130 Cal.App.3d 15, 23 [181 Cal.Rptr. 640].)

sicians' unemployment benefits which otherwise occurs by reason of the instability and poor bargaining position of itinerate musical groups.

Presection 680, judicial precedent held form B contracts, in spite of their seemingly clear language, did not create the employment relationship necessary to require withholding of unemployment contributions. ■ Section 680 reflects legislative recognition music groups need unemployment insurance protection while the state likewise needs a permanently located employer, rather than an itinerate group leader, to facilitate its collection of unemployment insurance contributions. ■ Enacted in 1971 (Stats. 1971, ch. 1281, § 1) and repealed in 1982 (Stats. 1982, ch. 1215, § 2), section 680 provided: " 'Employer' means any person contracting for the services of musicians where all of the following conditions are met:

"(a) Such person has executed a written agreement with a labor organization representing the musicians which provides that such person is the 'employer' of such musicians, and assumes liability to provide for and pay unemployment insurance taxes upon their wages.

"(b) The services of musicians are to be performed for a period in excess of one day.

"(c) Such person has a federal employer number and a reserve account established in the Unemployment Fund.

"(d) No other person has paid unemployment insurance taxes for the musicians employed in the written agreement referred to in the subdivision (a) for the period covered by such agreement."[4]

In 1974 (Stats. 1974, ch. 738, § 2, repealed by Stats. 1982, ch. 1215, § 3), the Legislature enacted section 681[5] to provide unemployment insurance protection more broadly to nonunion musicians as well.

---

[4]The only bases asserted by Far West to exclude it from the breadth of section 680 are within subdivision (a).

[5]Section 681 provided: "(a) In any case in which a person who has executed a written agreement for the purchase of the services of musicians does not come within the provisions of Section 680, such person shall ascertain whether or not the person contracting to provide the musicians' services to the purchaser has a federal employer number and a reserve account established in the Unemployment Fund.

"(b) If the person contracting to provide the musicians' services has a federal employer number and a reserve account established in the Unemployment Fund, he shall, for the purposes of this division, be the employer of all musicians providing services for him under such contract if both of the following conditions are present.

"(1) The services of the musicians are to be performed for a period in excess of one day.

"(2) No other person has paid unemployment insurance taxes for the musicians employed in or pursuant to the written agreement referred to in subdivision (a) for the period covered

Contrary to the trial court's ruling, Far West is an employer within the meaning of section 680. The subdivision (a) requirement of an employer to be a person who has "executed a written agreement with a labor organization representing the musicians" was satisfied here when Far West used the form B contract in all dealings with union musicians knowing a copy of the contract would be submitted to the union for approval. Granted, Far West never executed a written collective bargaining agreement with the union establishing a union shop; however, the undisputed primary legislative purpose underlying section 680 was to overrule judicial precedent holding form B contracts did not create a common law employer/employee relationship. This recognition compels us to interpret the phrase "executed a written agreement with a labor organization" as referring to form B contracts. Further, although the union is not an express signatory to the form B contracts between Far West and a solo musician or the leader of a musical group, the nature of the contracts and the record shows the union was an implied, if not an express, party to the form B contract.

As stated, the form B contract is a standard union form agreement prepared in quadruplicate uniformly used in all contracts with union musicians, one copy of which must be forwarded to the union for its review and approval. If the union finds the terms contained within the contract do not conform to union requirements, it requests them to be modified or sanctions the union members involved. Here, Far West executed the form B contracts whenever dealing with union musicians fully aware of the nature of the form B contract and section 680, and that a copy would be submitted to the union. Although the precise substance of the form B contracts vary with each contract, each are replete with references to the union and its constitution, bylaws, rules, regulations and orders establishing their precedence over the basic terms of the agreement. In fact, some of the contracts provide: "This contract shall be filed for approval with the Local Union in whose jurisdiction the services are to be performed, and must bear the Union's stamp or signature of filing on the original and all copies. This agreement shall not be enforceable by the employer until approved by the Federation or the Local in whose jurisdiction the services are to be performed.

by such agreement.

"(c) If the person providing the musicians' services does not have a federal employer number and a reserve account, the purchaser of the services shall, for the purposes of this division, be the employer of the provider and all musicians working for the provider if all of the following conditions are met:

"(1) The services of the musicians are to be performed for a period in excess of one day.

"(2) The purchaser has a federal employer number and a reserve account established in the Unemployment Fund.

"(3) No other person has paid unemployment insurance taxes for the musicians employed in or pursuant to the written agreement referred to in subdivision (a) for the period covered by such agreement."

" . . . . . . . . . . . . . . . . . . . . . . .

"The original and all copies of this agreement must be signed by the parties and after approval by the Federation or Local in whose jurisdiction the services are to be performed, and prior to engagement the original shall be filed with the Local (address listed below) and the various copies distributed to the parties as indicated." Consequently, as expressly provided above in some contracts, and as impliedly established by Far West's knowledge, all form B contracts regardless of their contents would be forwarded to the union, the union was a participant in the contractual arrangement with rights and obligations and would unquestionably be considered a party had an officer of the union actually signed and returned a copy. ■ However, the fact that a party to a contract has not signed the written document invalidates it only with regard to the statute of frauds and enforcing the agreement against that particular party. ■ Thus, Far West, having signed the written contracts, may not be excused from their obligation simply because the union did not sign them. Finally, the administrative record is replete with evidence establishing the union was a party to the form B agreements.[6]

Far West stresses it never entered into a collective bargaining agreement with the union, while urging the union was not a party to the form B contract. However, the scenario here establishes the contractual relationship between the parties and the union. Not only did the union provide the forms and dictate the text of the form B contract, Far West and the musicians agreed to all the provisions contained within the form B contract. Among them was the specific agreement to abide by the union's constitution and bylaws, rules and regulations. Far West accepted the designation as "employer," as well as the obligation to pay unemployment insurance contributions and in exchange was able to hire union musicians although not having agreed to a full union contract. Likewise, the musicians made certain guarantees to the union. While a form B contract is not a collective bargaining agreement, it nevertheless establishes a similar relationship between the parties with the same result while the particular musicians are tempo-

---

[6]For instance, one musician testified he intended to sign the agreement on behalf of the union, while one local president testified the union itself believed it is a party to the form B contract; the member represents the union when signing it; the union authorizes the member to sign the contract on its behalf; the union can withdraw the authority of a member to execute a form B contract on behalf of the union; members are not authorized by the union to change the terms of the form B contract; the form B contract incorporates the constitution and bylaws of the American Federation of Musicians International and local union; the member is not authorized by the union to sign any form of contract other than form B; the local union approves or disapproves the contract and without approval the musician cannot perform under the contract on pain of union discipline; and, in fact, the union has disapproved many form B contracts with other music purchasers.

rarily working for the employer. For, the form B contract contains the same basic terms and conditions of employment peculiar to the music entertainment industry and binds the employer as well as the employee to provisions not dissimilar from an ordinary collective bargaining agreement. Moreover, as noted earlier, Far West did not delete the contribution withholding provision from the form B contract it knew had to be approved by the union, it avoided it by a surreptitious side agreement. Accordingly, we conclude Far West has by implication in the contract and by its own expressed conduct entered into an effectively binding agreement with the union in concert with union musicians. To conclude otherwise would render the form B contract a nullity regarding the binding of the employer and employee to the union regulations. Moreover, it would cast aside the apparent intention and understanding of the parties regarding the execution of the contract reflected by the union's authorization of the leaders to enter into the contracts on its behalf and the forwarding of copies of the agreements to the union for approval.

Far West contends that even if this court finds it did contract with a labor organization under section 680, substantial evidence supports a finding that any such agreement is not legally sufficient to make Far West an employer liable for withholding the taxes because its side agreements expressly disclaimed that obligation. We are unpersuaded. Far West's "now you see it, now you don't" subterfuge under which it made the union believe the only contract involved was the form B agreement, while requiring the solo musician or group leader to execute a "modification" requiring him to pay "taxes" and declaring the musicians were "independent contractors," is a simple scam to avoid both union problems and compliance with section 680. Public policy, articulated by the enactment of section 680, prevents Far West from avoiding its primary liability or statutory responsibility to make unemployment insurance benefits payments for the musicians employed. To allow Far West to use its scheme to avoid personal responsibility for the unemployment insurance payments thwarts section 680's overruling of judicial precedent to insure adequate growth of the unemployment insurance fund in light of the legislative recognition musicians need unemployment insurance protection, and to facilitate the state's collecting unemployment insurance contributions through the use of a permanently located employer rather than an itinerate group leader or solo musician.[7]

Finally, section 1342 invalidates "[a]ny agreement by any individual in the employ of any person or concern to pay all or any portion of the con-

---

[7]It appears Far West challenges this administrative burden not because of its cost, but because it provides them with some economic advantage or benefit when bargaining with musicians to the latter's detriment.

tributions required of his employer under this division . . . ." The modification agreement constitutes such an agreement. Accordingly, we conclude Far West assumed liability to provide for and pay unemployment insurance taxes upon the wages of musicians employed within the meaning of subdivision (a) of section 680 in light of its assumption of liability for unemployment insurance contributions within the form B contracts.[8]

### Section 680 Does Not Deny Equal Protection

■ Far West contends section 680 denies it equal protection of the laws under both the United States and California Constitutions because there is no rational basis to differentiate between a restaurant employing union musicians and one employing nonunion musicians. Far West wrongly contends both employers are similarly situated in providing food and entertainment for their customers and employing musicians to entertain them. It asserts the labor union membership of some employees does not constitute a significant classification to require restaurants employing union musicians to pay unemployment insurance contributions while restaurants employing nonunion musicians need not because their musicians are independent contractors.

In reviewing Far West's constitutional challenge, we apply "the so called 'traditional' or 'restrained' standard which requires courts to uphold the validity of a legislative classification if it rationally relates to a legitimate state purpose." (*Farmers Ins. Exchange* v. *Cocking* (1981) 29 Cal.3d 383, 389 [173 Cal.Rptr. 846, 628 P.2d 1]; *Cooper* v. *Bray* (1978) 21 Cal.3d 841, 847 [148 Cal.Rptr. 148, 582 P.2d 604]; *Newland* v. *Board of Governors* (1977) 19 Cal.3d 705, 711 [139 Cal.Rptr. 620, 566 P.2d 254]; *Seguros La Provincial, S.A.* v. *Fremont Indemnity Co.* (1983) 138 Cal.App.3d 923, 928 [188 Cal.Rptr. 331].) "Although the challenged legislation is presumed constitutional (*D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1, 16 [112 Cal.Rptr. 786, 520 P.2d 10]), we must conduct a ' "serious and genuine judicial inquiry" into the nature of the connection between the particular classification and the legislative goals.' [Citations.]" (*Seguros La Provincial, S.A.* v. *Fremont Indemnity Co., supra,* at p. 928.) In order to sustain its position under the rational basis test, Far West cannot merely argue the underlying legislative rationale for section 680 was unwise, or the legislative purpose could have been better furthered by another means, or legislatures in addressing similar problems in similar areas have made dissimilar judgments, but rather must show the legislative choice is irrational, or the purpose promoted is not a legitimate legislative concern. (*Id.* at p. 929; *Schwalbe* v. *Jones* (1976) 16 Cal.3d 514, 522-523 [128 Cal.Rptr.

---

[8]See footnote 2, *ante.*

321, 546 P.2d 1033], overruled on other grounds in *Cooper* v. *Bray, supra,* 21 Cal.3d 841, 855.) ■ In summary, the principle of equal protection preserved by both constitutions does not preclude the Legislature from drawing distinctions between different groups of individuals, but it does mandate at a minimum that persons similarly situated regarding the legitimate purpose of the law receive like treatment. (*Brown* v. *Merlo* (1973) 8 Cal.3d 855, 861 [106 Cal.Rptr. 388, 506 P.2d 212, 66 A.L.R.3d 505].) ■ In other words, " 'The Equal Protection Clause . . . den[ies] to States the power to legislate that different treatment be accorded to persons placed by a statute into different classes on the basis of criteria wholly unrelated to the objective of that statute. *A classification "must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike." ' "* (*Ibid.,* at p. 861, quoting *Reed* v. *Reed* (1971) 404 U.S. 71, 75-76 [30 L.Ed.2d 225, 229, 92 S.Ct. 251], quoting *Royster Guano Co.* v. *Virginia* (1920) 253 U.S. 412, 415 [64 L.Ed. 989, 990-991, 40 S.Ct. 560].) ■ Consequently, where a statute provides different treatment for two classes, the Constitutions require not only nondiscriminatory application within the class but also rationality in the nature of the class singled out. (*Brown* v. *Merlo, supra,* 8 Cal.3d 855, 861; *Rinaldi* v. *Yeager* (1966) 384 U.S. 305, 308-309 [16 L.Ed.2d 577, 580, 86 S.Ct. 1497].)

■ We find a reasonable distinction between restaurants hiring union musicians and restaurants hiring nonunion musicians with regard to the purpose of section 680, justifying the different legislative treatment of the classes before the enactment of section 681 between 1972 and 1974. Unlike restaurants hiring nonunion personnel, restaurants hiring union personnel execute form B contracts within which they contractually assume the role of "employer." Because union musicians are required to use form B contracts, employers of such personnel occupy a different position than "employers" of nonunion musicians who are free to negotiate contracts under any terms and circumstances they legally can obtain. This difference upon which the classification rests rationally relates to the legitimate state purpose underlying section 680. As previously stated, section 680 was enacted primarily to overrule the effect of judicial precedent holding musicians who had contracted to provide services under the form B contract were nevertheless independent contractors contrary to the express language of the form B agreement. Consequently, the Legislature with the support of the union sought to validate the underlying terms of the form B contract. By so doing, the Legislature achieved its remaining purposes of facilitating the collection of unemployment insurance contributions through a permanently located employer to protect musicians' unemployment insurance protection. The fact the Legislature later afforded nonunion musicians the same protections

by enacting section 681 does not establish a legislative belief or finding that doing so was required in order to avoid equal protection violations. Enactment of section 681 does not affect our holding that, by assuming an "employer" status as well as the obligation to pay unemployment insurance benefits, restaurants employing union musicians comprise a constitutionally valid class, rationally relating to legitimate state purposes underlying section 680.

### The Form B Contracts Did Not Violate the National Labor Relations Act

Far West claims a finding the form B contract is a written agreement between it and a labor organization representing the musicians directly conflicts with the NLRA because section 8(e) of the NLRA provides in pertinent part: "It shall be an unfair labor practice for any labor organization and any employer to enter into any contract or agreement, express or implied, whereby such employee ceases or refrains or agrees to cease or refrain from handling, using, selling, transporting or otherwise dealing in any of the products of any other employer, or to cease doing business with any other person, and any contract or agreement entered into heretofore or hereafter containing such an agreement shall be to such an extent unenforceable and void . . . ." After citing a provision from the rejected collective bargaining agreement offered to Far West which was purportedly contrary to section 8(e), Far West argues that by including similar language within the form B contract the agreement violates section 8(e) of the NLRA and is void. However, (1) the disputed language only applies to those union musicians who are parties to and direct beneficiaries of the form B contract, and (2) the form B contract clause expressly provides the paragraph will "not become effective unless and until permitted by applicable law."

### Disposition:

Judgment reversed.

Staniforth, Acting P. J., and Wiener, J., concurred.